USCA1 Opinion

 

 April 28, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _____________________ No. 93-1106 ERIC CLAUSEN, Plaintiff, Appellee, v. SEA-3, INC., Defendant, Appellee. _____________________ ERRATA SHEET The opinion of this Court issued on April 19, 1994, is amended as follows: On page 14, line 3 of first paragraph of section II, add an "ly" to "perpendicular". On page 20, last line, replace "the" with "a." On page 46, line 2 of part "2.", replace "motion to alter or amend the judgment to "Motion to Alter or Amend a Judgment." UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1106 ERIC CLAUSEN, Plaintiff, Appellee, v. SEA-3, INC., Defendant, Appellee. ____________________ STORAGE TANK DEVELOPMENT CORPORATION, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Howard C. Bratton,* U.S. Senior District Judge] __________________________ ____________________ Before Boudin Circuit Judge, _____________ Coffin and Campbell, Senior Circuit Judges. _____________________ ____________________ Robert L. Elliott with whom Charla Bizios Labbe and Kfoury & __________________ _____________________ ________ Elliott, P.C. were on brief for Sea-3, Inc. _____________ Thomas E. Clinton with whom Robert J. Murphy was on brief for __________________ ________________ Storage Tank Development Corporation. Michael B. Latti with whom David F. Anderson and Latti Associates ________________ __________________ ________________ were on briefs for plaintiff. ____________________ April 19, 1994 ____________________ ____________________ *Of the U.S. District Court for the District of New Mexico, sitting by designation. CAMPBELL, Senior Circuit Judge. On February 6, _____________________ 1989, Eric Clausen ("Clausen"), plaintiff-appellee, slipped, fell, and injured his back while working as a pile driver at a job site at a fuel terminal facility on the Piscataqua River, Portsmouth Harbor, Newington, New Hampshire. A Massachusetts resident, Clausen sued for negligence, under the diversity jurisdiction, in the United States District Court for the District of New Hampshire. Defendants were the owner of the facility, Storage Tank Development Corp. ("Storage Tank"), a New Hampshire corporation, and the occupier of the facility, Sea-3, Inc. ("Sea-3"), a Texas corporation. Defendants filed third-party complaints against Clausen's employer, Goudreau Construction Corp. ("Goudreau"). Clausen's claims went to trial beginning on October 5, 1992. Storage Tank's and Sea-3's third-party claims against Goudreau were omitted from that trial.1 On October 9, 1992, the jury returned a special verdict in Clausen's favor, pursuant to Fed. R. Civ. P. 49(a), finding him to have been damaged in the amount of $1,426,000.2 On October 13, 1992, the district court entered judgment in accordance with the special verdict. On December 31, 1992, the district ____________________ 1. The district court ordered a separate trial of the defendants' third-party claims against Goudreau pursuant to Fed. R. Civ. P. 42(b). 2. Responding to special questions, the jury apportioned liability against Storage Tank at 37.5%, Sea-3 at 37.5%, and Goudreau at 25%. -3- court clarified its October 13, 1992, judgment to hold Sea-3 and Storage Tank jointly and severally liable to Clausen for $1,426,000, with prejudgment interest at the rate of ten percent (10%) from the date of the complaint to the date of the verdict, plus costs. On January 22, 1993, Sea-3 and Storage Tank filed separate notices of appeal from the district court's December 31, 1992, amended judgment.3 We affirm. I. APPELLATE JURISDICTION Clausen argues that we do not have appellate jurisdiction over Storage Tank's appeal because the district court's December 31, 1992, amended judgment was not an appealable "final decision" as that term is used in 28 U.S.C. 1291 (1988).4 We trace the procedural history. When Storage Tank filed its notice of appeal on January 22, 1993, from the district court's December 31, ____________________ 3. On March 1, 1994, Sea-3 and Clausen reached a settlement agreement in which Sea-3 agreed to withdraw its appeal. Accordingly, on March 7, 1994, we entered an order dismissing Sea-3's appeal pursuant to Fed. R. App. P. 42(b). Hence, Storage Tank remains the sole appellant. 4. 28 U.S.C. 1291 (1988) states in pertinent part: The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final ___________________________________________________ decisions of district courts of the United States . _________________________________________________ . . . (emphasis added). -4- 1992, amended judgment, its own unresolved, third-party claims were still pending against Goudreau. This situation was problematic because a judgment that completely disposes of . . . any separate claim in the suit[,] without disposing of the third-party claim, is not appealable unless a judgment is entered by the district court [pursuant to Fed. R. Civ. P. 54(b)5] on the express determination that there is no just reason for delay, and an express direction for the entry of judgment. 6 James W. Moore et al., Moore's Federal Practice 54.36 (2d ________________________ ed. 1993). As the district court had not yet entered an appealable judgment within Fed. R. Civ. P. 54(b), this court advised Storage Tank, by order entered February 9, 1993, that "[u]pon review of the record in this case, it appears that this court may not have jurisdiction to consider the appeal because a third party complaint . . . may be outstanding." We directed Storage Tank "either to move for voluntary dismissal under Fed. R. App. P. 42(b) or to show cause why [its] appeal should not be dismissed." ____________________ 5. Fed. R. Civ. P. 54(b) states in pertinent part: When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. -5- Following our February 9, 1993, show cause order, Clausen on February 19 moved the district court to "certify [pursuant to Fed. R. Civ. P. 54(b)] that the judgment entered on October 13 and amended on December 31, 1992[,] is a `final judgment' and `that there is no just reason for delay.'" Storage Tank then moved this court for additional time to respond to our February 9, 1993, show cause order. On March 4, 1993, we granted appellant's motion, extending the time within which Storage Tank could respond to our February 9, 1993, order until March 23, 1993. In our March 4, 1993, order we instructed Storage Tank that, "[i]f the district court certifies its [judgment] as final pursuant to Rule 54(b), then, in order to avoid any . . . doubts [over jurisdiction], appellant[] should file [a] new notice[] of appeal." On March 31, 1993, over objection by the appellant and after oral argument, the district court entered an order in which it found, pursuant to Fed. R. Civ. P. 54(b), "that the judgment entered on December 31, 1992, in favor of Eric Clausen and against Storage Tank . . . is a final judgment and that there is no just reason for delaying appellate review." Notwithstanding our earlier direction that, to avoid jurisdictional complications, Storage Tank submit a new notice of appeal following the district court's Fed. R. Civ. -6- P. 54(b) certification, Storage Tank did not take such action. Clausen now contends that as Storage Tank's notice of appeal filed on January 22, 1993, more than two months prior to the district court's entry of judgment pursuant to Fed. R. Civ. P. 54(b) was premature, it should be treated as a nullity.6 Clausen is undoubtedly correct that Storage Tank's notice of appeal filed after the district court's ____________________ 6. Clausen cites Willhauck v. Halpin, 919 F.2d 788 (1st Cir. _________ ______ 1990), for the proposition that "a Notice of Appeal which is premature ``simply self-destructs'' and should be treated as a nullity." Id. at 792 (quoting Griggs v. Provident Consumer ___ ______ __________________ Discount Co., 459 U.S. 56, 61, 103 S. Ct. 400, 403, 74 L. Ed. ____________ 2d 225, 229 (1982) (quoting 9 James W. Moore et al., Moore's _______ Federal Practice 204.12[1] (1982))). This "nullity" _________________ principle, however, does not apply to this case. In Willhauck, unlike here, we dismissed the plaintiffs' initial _________ appeal on the merits of the case for want of jurisdiction because "the plaintiffs filed their Notice of Appeal from the district court's denial of their Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial, one day prior to the lower court's entry of judgment on the Motion." Id. at 790 n.2. The fact that the district ___ court had not yet entered judgment on motions filed pursuant to Fed. R. Civ. P. 50(b) and/or 59 when the Willhaucks filed their notice of appeal was dispositive because, under Fed. R. App. P. 4(a)(4) (pre 1993 amendment), a notice of appeal ____________________ shall have no effect if it is filed before the disposition of ____________________ a motion (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial. Significantly, Fed. R. App. P. 4(a)(4) does not expressly nullify a notice of appeal filed before the disposition of a Fed. R. Civ. P. 54(b) motion. -7- entry of its amended judgment, but before its Fed. R. Civ. P. 54(b) certification, was premature. See, e.g., Tidler v. Eli ___ ____ ______ ___ Lilly & Co., 824 F.2d 84, 85 (D.C. Cir. 1987). The amended ___________ judgment was unappealable until the district court "direct[ed] the entry of a final judgment . . . upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). This was eventually done, and we are at a loss as to why Storage Tank's attorney failed to follow our instruction to file a new notice of appeal following the district court's Fed. R. Civ. P. 54(b) certification.7 We conclude, nonetheless, that the prematurity of Storage Tank's notice of appeal does not deprive us of jurisdiction over the current appeal. The majority of circuits that have addressed jurisdictional quagmires similar to this one have held that a belated Fed. R. Civ. P. 54(b) certification ripens a premature notice of appeal as of the date of the certification. See, e.g., United States v. Hardage, 982 F.2d ___ ____ _____________ _______ 1491, 1494-95 (10th Cir. 1993); Harrison v. Edison Bros. ________ _____________ Apparel Stores, Inc., 924 F.2d 530, 532 (4th Cir. 1991); In ____________________ __ re Chateaugay Corp., 922 F.2d 86, 91 (2d Cir. 1990); Martinez ___________________ ________ ____________________ 7. Had Storage Tank properly followed our instructions, it would have filed a new notice of appeal "with the clerk of the district court within 30 days of" the district court's entry of judgment pursuant to Fed. R. Civ. P. 54(b). See ___ Fed. R. App. P. 4(a)(1). -8- v. Arrow Truck Sales, Inc., 865 F.2d 160, 161-62 (8th Cir. _______________________ 1988); Crowley Maritime Corp. v. Panama Canal Comm'n, 849 _______________________ ____________________ F.2d 951, 954 (5th Cir. 1988); Tidler v. Eli Lilly & Co., 824 ______ _______________ F.2d 84, 85-86 (D.C. Cir. 1987); Aguirre v. S.S. Sohio _______ ___________ Intrepid, 801 F.2d 1185, 1189 (9th Cir. 1986); Lac Courte ________ __________ Oreilles Band v. Wisconsin, 760 F.2d 177, 180-81 (7th Cir. _____________ _________ 1985). But see Useden v. Acker, 947 F.2d 1563, 1570 (11th _______ ______ _____ Cir. 1991), cert. denied, 113 S. Ct. 2927, 124 L. Ed. 2d 678 ____________ (1993); Haskell v. Washington Township, 891 F.2d 132, 133 _______ ___________________ (6th Cir. 1989). In reaching this decision, the circuits "follow the same relation forward principle as is provided by [Fed. R. App. P.] 4(a)(2),8 [although they] do not generally refer to that rule." Allan Ides, The Authority of a Federal __________________________ District Court to Proceed After a Notice of Appeal Has Been _____________________________________________________________ Filed, 143 F.R.D. 307, 316 (1992) (footnote not in original). _____ ____________________ 8. Fed. R. App. P. 4(a)(2) (pre 1993 amendment) states: "Except as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." According to the United States Supreme Court: Rule 4(a)(2) was intended to codify a general practice in the courts of appeals of deeming certain premature notices of appeals effective. . . . The Rule recognizes that, unlike a tardy notice of appeal, certain premature notices do not prejudice the appellee and that the technical defect of prematurity therefore should not be allowed to extinguish an otherwise proper appeal. FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 ______________________ _____________________________ U.S. 269, 273, 111 S. Ct. 648, 651, 112 L. Ed. 2d 743 (1991). -9- The Tenth Circuit, however, specifically referred to Fed. R. App. P. 4(a)(2) in its holding that, "[w]hen the district court case is still ongoing at the time the appeal reaches this court's attention, . . . [and] a belated Rule 54(b) certification has been obtained . . . after the notice of appeal was filed, we will deem the notice of appeal to ripen as of the date of certification and will accept the jurisdiction pursuant to the savings provision of Fed. R. App. P. 4(a)(2)." Lewis v. B.F. Goodrich Co., 850 F.2d 641, _____ __________________ 645 (10th Cir. 1988). The Fifth Circuit has stated that "giving effect to the premature notice of appeal [after a belated Fed. R. Civ. P. 54(b) certification has been obtained] is in the spirit of Fed. R. App. P. 4(a)(2)." Metallurgical Indus., Inc. v. Fourtek, Inc., 771 F.2d 915, ___________________________ _____________ 916 (5th Cir. 1985). Hence, while the problem might also be tackled from some other direction, Fed. R. App. P. 4(a)(2) suggests that a premature notice of appeal relates forward to the date of a subsequent Fed. R. Civ. P. 54(b) certification. Clausen argues, however, that, by virtue of a recent ruling by the United States Supreme Court in FirsTier ________ Mortgage Co. v. Investors Mortgage Insurance Co., 498 U.S. ____________ _________________________________ 269, 111 S. Ct. 648, 112 L. Ed. 2d 743 (1991), Fed. R. App. P. 4(a)(2) cannot rescue Storage Tank's prematurely filed appeal. There, the Supreme Court decided that, "under [Fed. R. App. P. 4(a)(2)], a premature notice of appeal relates -10- forward to the date of entry of a final `judgment' only when _________ the ruling designated in the notice is a `decision' for _____________________________________________________________ purposes of the Rule." FirsTier, 498 U.S. at 274 n.4 _______________________ ________ (emphasis added). Although Clausen argues to the contrary, we believe that the district court's December 31, 1992, amended judgment was sufficiently a "decision" for purposes of Fed. R. App. P. 4(a)(2). In FirsTier, the petitioner filed its notice of ________ appeal on February 8, 1989, after the district court had announced from the bench, on January 26, 1989, that it intended to grant summary judgment for the respondent. On March 3, 1989, the district court entered judgment. The question addressed by the Court was whether the district court's bench ruling was a "decision" under Rule 4(a)(2) so that the petitioner's premature notice of appeal would relate forward to the date of the judgment, thereby conferring jurisdiction upon the court of appeals. In finding that the bench ruling was a "decision" under Rule 4(a)(2), and that the court of appeals had jurisdiction to entertain the appeal, the Court held that "Rule 4(a)(2) permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that would be appealable if immediately ________ followed by the entry of judgment." Id. at 276 (emphasis in ___ original). The Court qualified this principle by explaining -11- that Rule 4(a)(2) does not permit a "notice of appeal from a clearly interlocutory decision such as a discovery ruling or a sanction order under Rule 11 of the Federal Rules of Civil Procedure to serve as a notice of appeal from the final judgment." Id. ___ In this case, the district court's December 31, 1992, amended judgment was not literally a decision that would be appealable if immediately followed by the entry of judgment. This is because, with third-party claims as yet unresolved, the December 31, 1992, amended judgment did not dispose of all the claims in the case. Therefore, judgment could not perfunctorily be entered following the ruling __________ absent the certification called for by Fed. R. Civ. P. 54(b). To certify, the district court had to make an express determination of no just reason for delay. Only having done so was it free to enter a final judgment upon its December 31, 1992, amended judgment. Thus, the December 31, 1992, amended judgment here does not, at first blush, seem to fit within the Court's language in FirsTier and its progeny ________ indicating that a decision that would be appealable when immediately followed by the entry of judgment is one that "form[s] the basis of a final judgment without subsequent intervention by the district court." Serine v. Peterson, 989 ______ ________ F.2d 371, 373 (9th Cir. 1993); see Strasburg v. State Bar, 1 ___ _________ _________ F.3d 468, 472 (7th Cir. 1993) ("Whereas the district court in -12- FirsTier had only ministerial functions left to complete ________ after announcing summary judgment, the district court's order here notified the parties that they should expect further dispositive rulings by the court."). On the other hand, the nonfinal December 31, 1992, amended judgment in this case was not irremediably interlocutory as were the examples the Court used in FirsTier ________ to describe rulings the premature appeal from which Fed. R. App. P. 4(a)(2) cannot cure. The examples given were a discovery ruling or a sanction order under Rule 11 of the Federal Rules of Civil Procedure. There is no commonly used procedure for transforming such interlocutory rulings into appealable, final dispositions, as Rule 54(b) allows in the instance of decisions that dispose of some, but not all, of the claims in a case. Thus, the district court's amended judgment in this case falls somewhere along the continuum between an unalterably interlocutory decision, the notice of appeal from which can never serve as a notice of appeal from the final judgment, FirsTier, 498 U.S. at 276, and decisions ________ that would be appealable under Rule 4(a)(2) when immediately followed by the entry of judgment. We ask, therefore, whether the district court's amended judgment is close enough to a "decision that would be appealable if immediately _____ __ followed by the entry of judgment," id., to be a "decision" ___ -13- for purposes of Fed. R. App. P. 4(a)(2). Our answer is "Yes."9 The district court's December 31, 1992, amended judgment bears far more similarity to a decision that would be appealable if immediately followed by the entry of judgment than to the purely interlocutory decrees described in FirsTier. Unlike these, the December 31, 1992, amended ________ judgment was a decision that purported to dispose finally of all of Clausen's claims against Storage Tank, if not all the claims in the lawsuit. The decision lacked finality only because the district court had to find that there was no just reason for delay and certify it as appealable immediately pursuant to Fed. R. Civ. P. 54(b). Although this required the district court to make an additional finding concerning the appropriateness of an immediate appeal, that finding did not affect the substance or the scope of the amended judgment from which the premature appeal was taken. Rather, once made, the district court's Fed. R. Civ. P. 54(b) ruling instantly converted the substance of the former interlocutory amended judgment into a wholly appealable one without _______ modifying or enlarging that decision in any way. _______________________________________________ ____________________ 9. FirsTier, of course, did not involve Fed. R. Civ. P. ________ 54(b); hence, the Court should not necessarily be expected to have anticipated the niceties of the present situation, which is sui generis. ___ _______ -14- The primary difference between the December 31, 1992, decision in this case and the bench ruling in FirsTier ________ was that the district court here could not perfunctorily enter judgment under Fed. R. Civ. P. 58. Rather, it had to satisfy itself and certify that the decision was, in effect, appropriate for immediate appeal, pursuant to Fed. R. Civ. P. 54(b), notwithstanding its failure to resolve all claims made in the lawsuit.10 This difference, however, does not make the district court's December 31, 1992, amended judgment so dissimilar from the district court's bench ruling in FirsTier ________ that Storage Tank should lose the protection of the savings clause of Fed. R. App. P. 4(a)(2). In both instances, the prematurely-appealed decisions remained absolutely unaltered to and through entry of an appealable judgment. Consequently, we hold that, by virtue of Fed. R. App. P. 4(a)(2), Storage Tank's premature notice of appeal ripened when the district court certified its December 31, 1992, amended judgment pursuant to Fed. R. Civ. P. 54(b). As we have appellate jurisdiction, we turn to the merits of the appeal. II. ____________________ 10. It could be said that, for the purposes of Fed. R. App. P. 4(a)(2), a Fed. R. Civ. P. 54(b) certification plays the same role as entry of judgment under Fed. R. Civ. P. 58. In other words, "entry of judgment," as that phrase appears in Fed. R. App. P. 4(a)(2), encompasses Fed. R. Civ. P. 54(b) certifications. -15- BACKGROUND Storage Tank owns docking facilities along the Piscataqua River in Newington, New Hampshire. These include a walkway-pier that first extends perpendicularly from the shore line into the water, and then turns ninety degrees to the left and extends upstream. A concrete mooring cell, referred to as Cell Three, is located in the water beyond the end of the walkway-pier.11 Cell Three, at the time of Clausen's injury, was connected to the end of the walkway- pier by the ramp upon which Clausen slipped and fell. The ramp sloped downward to Cell Three from the walkway-pier. In April 1992, the ramp was replaced by Storage Tank, at Sea-3's request, with a set of steps because the concrete cell cap had settled. Sea-3 imports and distributes petroleum products throughout New England. At all material times, Sea-3 had a first-priority contractual right, under a so-called Dock Agreement with Storage Tank, to occupy and use the docking facilities. In 1983, Sea-3 sought to improve the docking facilities by making structural changes to Cell Three. Sea-3 contracted with Goudreau to perform the work. Storage Tank was not a party to that contract. ____________________ 11. The mooring cells were filled with gravel and capped with concrete to provide support for the dolphins and bollards upon which vessels attached their mooring lines. -16- On February 5, 1989, Goudreau hired Clausen to work on Cell Three as a pile driver. Clausen's first day on the job was February 6, 1989, the day he suffered his injury. When Clausen arrived at the job site at 7:00 a.m. on the morning of February 6, 1989, it was snowing. Between one and two inches of fresh snow had accumulated on the dock. Upon receiving permission to begin work, Clausen and his coworkers, Daniel Woundy, William Burroughs, and Kenneth King, the foreman, proceeded down the walkway-pier towards Cell Three. Prior to the group's arrival at Cell Three, King instructed Clausen to go back and retrieve an air compressor hose that was stored in a guardhouse. Clausen retrieved the air compressor hose and then headed back down the walkway- pier toward the ramp that connected the walkway-pier to Cell Three. Somewhere along the ramp that connected the walkway- pier to Cell Three, Clausen slipped, fell, and injured his back. Immediately after the fall, Clausen experienced pain that radiated down his back to his ankle. Despite the pain, Clausen continued to work until his lunch break. After lunch, Clausen was in too much pain to continue working, and he decided to go home for the day. Upon arriving at home, Clausen immediately made an appointment with a chiropractor for 3:00 p.m. that afternoon. -17- For approximately eight weeks following the accident, Clausen was treated by his chiropractor. A CAT scan taken two months after the accident revealed a herniated disk at the L5-S1 level. Consequently, Clausen was referred to Dr. Gerwin Neumann, a neurosurgeon at the New England Baptist Hospital. After confirming the diagnosis of a disk herniation in L5-S1, Dr. Neumann, in May 1989, performed the first of what would eventually be five operations performed on various disks in Clausen's back. At trial, Clausen, the only witness to the accident, testified that the ramp on which he fell was constructed of what looked like two-inch thick by ten-inch wide "staging planks" that were joined together by a couple of slats. Clausen further testified that the ramp was ten to twelve feet long and was covered by snow. According to Clausen, the ramp protruded up over the walkway-pier by ten to twelve inches so that he had to step up onto the ramp in order to proceed down to Cell Three. Clausen's testimony revealed that he initially stepped up onto the ramp with his left foot. He did not have his hand on the railing because it did not come up high enough for him to reach it. Clausen then lifted his right foot off the ground, and, as he was about to place it on the ramp, his left foot slipped and he started to fall. Clausen testified that, as he fell, he twisted to the right and twisted back to the left and grabbed -18- onto the railing with his right hand as he was coming down. Then he hit the ramp. At that point, Clausen was holding onto the railing and had one hand on the ramp. He then let himself go and slid down the ramp the rest of the way to Cell Three. According to Clausen's trial testimony, once he got to the bottom, he looked back up and saw a sheet of ice about one-half inch thick covering the ramp from top to bottom.12 Based on Clausen's testimony, the defendants argued at trial that Clausen had actually slipped on staging planks that had been placed by Goudreau employees over the existing ramp that connected the walkway-pier to Cell Three. No witness testified at trial, however, to having seen staging planks placed over the ramp. To the contrary, there was ____________________ 12. Clausen's trial testimony did not comport with his earlier answers to interrogatories with regard to where he slipped and fell on the ramp. In response to interrogatories that inquired about how and where his fall had occurred, Clausen did not state that he slipped as he stepped onto the ramp, but rather answered that "[t]he incident occurred at the junction of the concrete cell and a gangplank connecting the cell to the pier" and that "[a]s [he] was moving from the gangplank to the cell, [he] was suddenly caused to slip and fall." Clausen's trial testimony was consistent, however, with previous deposition testimony in which he stated: So as I stepped up with my left foot and I went to reach for [the rail], I brought my right foot up and that's when I slipped and fell. And I twisted my back and as I came back around, that's when I grabbed ahold of the railing and I just fell down on my backside. -19- testimony that the ramp was "fixed" between the walkway-pier and Cell Three and that it did not protrude up over the walkway-pier, but was "flush" with it so that one had to step down onto the ramp when walking to Cell Three. There was further testimony that the ramp had cleats or treads, ten inches to one foot apart, running crosswise all the way up the length of the ramp. The ramp itself, according to trial witnesses, was approximately five feet wide by five feet long. Clausen also testified at trial that he still had back pain that radiated down his left leg. Dr. Neumann testified that there was a direct causal relationship between the accident on the ramp and Clausen's herniated disks, which required five operations to repair. He further testified that Clausen can lift no more than fifteen to twenty pounds and is totally disabled from a strenuous job. He noted, however, that, if Clausen's medical condition were to stabilize, he could engage in sedentary or clerical activity. To establish damages at trial, Clausen called Robert Doucette, an expert economist, to testify about Clausen's loss of earning capacity. Doucette said he had examined Clausen's tax returns, copies of union contracts, medical records, and statistical information pertaining to work-life expectancy. He testified that he used Clausen's union contract to calculate Clausen's base wage rate at the -20- time of his injury. In reliance on the contract, Doucette concluded that Clausen was earning a gross hourly wage of $18.45 when the accident occurred. He then adjusted this figure upward to $23.85 per hour to account for Clausen's fringe benefits under the union contract, which included an annuity fund, a pension fund, and health insurance. From these preliminary figures, Doucette concluded that it was reasonable to anticipate that Clausen would have earned approximately $875,000 in gross wages and $391,000 in benefits from the time he was injured, at age thirty-four, through the age of his work-life expectancy.13 Doucette adjusted these gross figures by subtracting income taxes, adding the average value of household services at minimum wage, and adding a lump sum to meet income tax liability on interest earnings. After making these adjustments, Doucette concluded that the present value of Clausen's earning capacity on the date of his injury totaled approximately $1,250,000. He explained that this sum represents the amount of economic value that Clausen could have been expected to produce if he had not been injured, and any pecuniary damages attributable to the injury is measured ____________________ 13. According to Doucette, work-life expectancy expresses an average of how long a person may be expected to be in the labor force earning income. It is a function of a person's age, sex, level of education, and activity level. -21- by the difference between $1,250,000 and what Clausen is still able to earn in the future. III. Storage Tank contends that the district court made errors both during trial and after trial. Among the former, Storage Tank alleges mistaken evidentiary rulings and jury instructions. It argues that the district court erred in (1) allowing evidence of subsequent remedial measures undertaken on the ramp where Clausen slipped and fell, (2) denying Storage Tank's counsel the opportunity to cross-examine Clausen's economist, Doucette, on the subject of union benefits that Clausen allegedly received after the accident, and (3) instructing the jury to assess fault against Goudreau, a non-party to the trial. In the category of post- trial error, Storage Tank objects to the district court's (1) refusal to file its Renewed Motion for Judgment as a Matter of Law, (2) denial of its Motion for Judgment as a Matter of Law, and (3) denial of its Motion to Alter or Amend the Judgment. We find merit in none of these arguments. A. Alleged Trial Errors A. Alleged Trial Errors 1. Evidence of Subsequent Remedial Measures ________________________________________ Storage Tank complains of the allowance of evidence that, in 1992, Storage Tank, at Sea-3's request, replaced a ramp on which Clausen fell with a set of steps. Prior to -22- trial, Storage Tank had filed a motion in limine seeking to exclude evidence of the changes made to the ramp both on the issues of negligence and control. Storage Tank argued in its motion that evidence of subsequent remedial measures is inadmissible under Fed. R. Evid. 40714 to prove negligent or culpable conduct. It also contended that, although there was an unresolved issue in the case about whether Goudreau, Storage Tank, Sea-3, or some combination of the three controlled the area where Clausen fell, the evidence of the ramp's replacement in this case carried no probative weight with regard to the control issue. The district court denied Storage Tank's motion in limine, but limited the scope of the evidence to the issue of who had control over the area where Clausen's injury occurred. At the end of the trial, the district court gave the jury a limiting instruction to this effect. ____________________ 14. Fed. R. Evid. 407 states: When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the ____________________________________ exclusion of evidence of subsequent measures when ___________________________________________________ offered for another purpose, such as proving ___________________________________________________ ownership, control, or feasibility of precautionary ___________________________________________________ measures, if controverted, or impeachment. __________________________________________ (emphasis added). -23- On appeal, Storage Tank insists that the district court should not have allowed Clausen to introduce evidence of the replacement of the ramp under the control exception to Fed. R. Evid. 407. It contends that the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.15 Clausen asserts, however, that we need not reach the merits of Storage Tank's argument because it did not preserve the issue for appeal by timely objecting at trial to the admission of the evidence of the ramp's replacement. We agree. During the charging conference, the following exchange occurred: Mr. Clinton: First of all, your Honor, the remedial instruction with regard to the issue of control of the stairs in 1992 was only for the purpose of control. The Court: In other words, you admitted it only for the purpose of control and not for liability? When it came in, there was no objection. I was Mr. Clinton: Well, I objected. ____________________ 15. Fed. R. Evid. 403, in full, states: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. -24- The Court: When? Not when it was offered, not when it came in. I'll be glad to put in something like that, but I was sitting here waiting Mr. Clinton: I filed a motion in limine instead of repeating. You denied the motion in limine, so I figured you ruled. The Court: But when no objection came, I didn't know at that point whether you had changed your position or what. . . . From this colloquy, it appears that Storage Tank felt that the district court's earlier denial of its motion in limine had relieved it of any need to object to the admission of the evidence of the subsequent repair at the time it was offered at trial. In United States v. Reed, 977 F.2d 14 (1st Cir. ______________ ____ 1992), we said that "[a] motion in limine without subsequent, _________ contemporaneous objection at trial, . . . is ordinarily insufficient to preserve an evidentiary ruling for appeal." Id. at 17 (citing Fed. R. Evid. 103(a)). More recently, we ___ expanded upon this general proposition by holding: Where an objection to evidence has been overruled in limine, it makes sense to require that the objection be renewed at trial. However definite the denial of the motion to exclude prior to trial, it is child's play for the opponent of the evidence to renew the objection when the evidence is actually offered; and requiring this renewal gives the trial judge a chance to reconsider the ruling with the concrete evidence presented in the actual context of the trial. Fusco v. General Motors Corp., 11 F.3d 259, 262 (1st Cir. _____ _____________________ 1993); see, e.g., United States v. York, 933 F.2d 1343, 1360 ___ ____ _____________ ____ (7th Cir.) (holding that "`[a] party whose motion in limine -25- has been overruled must object when the error the party sought to prevent is about to occur at trial'" (quoting United States v. Roenigk, 810 F.2d 809, 815 (8th Cir. ______________ _______ 1987))), cert. denied, 112 S. Ct. 321, 116 L. Ed. 2d 262 ____________ (1991); United States v. Khoury, 901 F.2d 948, 966 (11th Cir. _____________ ______ 1990) ("A defendant must object at trial to preserve an objection on appeal; the overruling of a motion in limine does not suffice."); Wilson v. Waggener, 837 F.2d 220, 222 ______ ________ (5th Cir. 1988) ("A party whose motion in limine is overruled must renew his objection when the evidence is about to be introduced at trial."). As the Fifth Circuit explained in Collins v. Wayne Corp., 621 F.2d 777 (5th Cir. 1980): _______ ___________ Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial. When a party files numerous motions in limine, the trial court may not pay close attention to each one, believing that many of them are purely hypothetical. Thus, a party whose motion in limine has been overruled must object when the error he sought to prevent with his motion is about to occur at trial. This will give the trial court an opportunity to reconsider the grounds of the motion in light of the actual instead of hypothetical circumstances at trial. Id. at 784. This rule "discourage[s] counsel from refraining ___ from making an objection at trial in order to reserve the opportunity to assert reversible error on appeal." United ______ States v. Roenigk, 810 F.2d 809, 815 (8th Cir. 1987). ______ _______ Because Storage Tank failed timely to object at trial to the admission of evidence of the subsequent -26- alteration to the ramp in 1992, we review the district court's decision to allow such evidence only for plain error. Reed, 977 F.2d at 17; see Fed. R. Evid. 103(d). "Plain ____ ___ error, however, is a rare species in civil litigation . . . ." Gay v. P.K. Lindsay Co., 666 F.2d 710, 712 n.1 (1st Cir. ___ ________________ 1981), cert. denied, 456 U.S. 975, 102 S. Ct. 2240, 72 L. Ed. ____________ 2d 849 (1982). Even in criminal cases, in the absence of proper objection we will "`correct only `particularly egregious errors' . . . that `seriously affect the fairness, integrity or public reputation of judicial proceedings,''" United States v. Nason, 9 F.3d 155, 160 (1st Cir. 1993) ______________ _____ (quoting United States v. Young, 470 U.S. 1, 15, 105 S. Ct. _____________ _____ 1038, 1046, 84 L. Ed. 2d 1 (1985) (quoting United States v. ______________ Frady, 456 U.S. 152, 163, 102 S. Ct. 1584, 1592, 71 L. Ed. 2d _____ 816 (1982))), cert. denied, S. Ct. , 1994 WL 69882 ____________ (1994), and we will reverse only in "`exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice,'" id. at 161 (quoting United States v. Griffin, ___ _____________ _______ 818 F.2d 97, 100 (1st Cir.), cert. denied, 484 U.S. 844, 108 ____________ S. Ct. 137, 98 L. Ed. 2d 94 (1987)); accord Gay, 666 F.2d at ______ ___ 712 n.1. It is utterly clear that the district court's decision to permit the evidence of the changes made to the ramp in 1992, whether right or wrong, was not plain error. Although Fed. R. Evid. 407 proscribes the admission of evidence of subsequent remedial measures to "prove -27- negligence or culpable conduct," it allows such evidence, as already noted, "when offered for another purpose, such as proving . . . control." Fed. R. Evid. 407. The parties agree that control of the ramp area where Clausen's injury occurred was a material issue in this case. According to the appellant, one aspect of the control issue arose because both Storage Tank and Sea-3 asserted that Goudreau was in control of the work site and was, therefore, responsible for clearing and sanding the area where the plaintiff fell. Clausen points out that a second aspect of the control issue in this case, not alluded to by Storage Tank, involved whether Storage Tank, Sea-3, or both jointly, controlled the area where Clausen fell if Goudreau, at that time, did not control the ramp.16 To be sure, Storage Tank argues that the evidence that it made changes to the ramp at the request of Sea-3 subsequent to Clausen's accident was inadmissible under the ____________________ 16. The trial judge's summary of the control issue sheds additional light on the parties' arguments: As I understand it, and as I'm putting it, the defendants, one, deny that there was an accident, two, they say if there was an accident, each one denies that it was responsible and maintains that any fault was that either of the plaintiff or Goudreau or both, and to each one there's an issue as to who was in control of the premises. You're ______ not in agreement on that, although you both say ___________________________________________________ that Goudreau was in control of the premises, but ___________________________________________________ if not, then who was? _____________________ (emphasis added). -28- control exception to Fed. R. Evid. 407 because the evidence failed to satisfy the independent requirements of Fed. R. Evid. 403. Storage Tank maintains that, because the ramp was replaced in 1992, approximately three years after Clausen's fall, the evidence is not probative of whether Storage Tank or Sea-3 controlled the ramp, either separately or jointly, in 1989, particularly since, according to Storage Tank, the area had been exclusively occupied by Goudreau when Clausen's injury occurred. Whatever can be said for such arguments had Storage Tank preserved its right to argue the merits, they do not come close to demonstrating that it was plain error for the district court to believe that the evidence carried at least some probative weight as to who controlled the ramp in 1989. Storage Tank also suggests that it was greatly prejudiced because the jury may have used the evidence of the ramp's replacement for an improper purpose. The judge, however, instructed the jury that "[e]vidence of the subsequent installation of stairs in 1992 is evidence relevant only on the issue of control. It is not to be considered evidence of liability or fault." According to the advisory committee's notes to Fed. R. Evid. 403, "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting -29- instruction." Although limiting instructions may not always be effective, see, e.g., United States v. Garcia-Rosa, 876 ___ ____ _____________ ___________ F.2d 209, 221-22 (1st Cir. 1989), cert. denied, 493 U.S. _____________ 1030, 110 S. Ct. 742, 107 L. Ed. 2d 760 (1990), cert. granted _____________ & vacated on other grounds, 498 U.S. 954, 111 S. Ct. 377, 112 __________________________ L. Ed. 2d 391 (1990), the inadequacy of the one in this situation is scarcely so patent as to support a finding of plain error. We do not readily assume that a jury disregards clear directions. See Gutierrez-Rodriguez v. Cartagena, 882 ___ ___________________ _________ F.2d 553, 574 (1st Cir. 1989). We are satisfied that admission of the evidence was not plain error. 2. Cross-Examination of Clausen's Expert, Doucette _______________________________________________ At trial, Clausen testified that, as a union member, he had enjoyed certain union employee fringe benefits, including a pension plan, an annuity fund, and a "health and welfare dental plan." Clausen did not mention, in this regard, workers' compensation payments, union disability benefits, or social security disability benefits. Later in the trial, Clausen's expert, Doucette, estimated Clausen's pecuniary damages (i.e., lost future earnings), ____ including wages and fringe benefits lost because of his inability to perform his former job due to the injury. In determining this figure, Doucette testified that Clausen, at the time of his injury, had earned "a gross hourly wage of -30- $18.45 per hour." He also testified that Clausen had then enjoyed fringe benefits consisting of "an annuity fund, a pension fund, and health and welfare, which is health insurance" the gross future value of which, calculated from the time of Clausen's injury through his age of work- life expectancy, totaled $391,000. Doucette did not mention workers' compensation payments, union disability benefits, or social security disability benefits. Prior to cross-examining Doucette, counsel for Storage Tank requested a ruling that [he] be allowed on cross-examination to go into the union benefits, such as [Clausen's] ___________________ disability benefits that he's currently receiving ___________________________________________________ and any Social Security benefits, since they have ___________________________________________________ opened it up by bringing it in as being factors. _______________________________________________ (emphasis added). Counsel for Clausen strenuously objected, saying the mentioned evidence had gone "only as to [Clausen's] earnings," there being "nothing said with respect to [Clausen] being economically deprived now because of no money or anything like that." After hearing from both parties, the court denied Storage Tank's request. In response, Storage Tank's counsel made an offer of proof: Note my exception, your Honor, but on the basis this is the collateral [source rule]. He's raised the issue. This is an offer. He's raised the [issue] of fringe benefits under unions and he's currently receiving disability benefits. The district court denied Storage Tank's request undoubtedly because of New Hampshire's collateral source -31- rule,17 which provides that "a plaintiff [who] is compensated in whole or in part for his damages by some source independent of the tort-feasor . . . is still permitted to make full recovery against him." Moulton v. _______ Groveton Papers Co., 114 N.H. 505, 509, 323 A.2d 906, 909 ___________________ (1974). According to the Supreme Court of New Hampshire, "[t]he rule that collateral benefits are not subtracted from the plaintiff's recovery has been applied to benefits paid under an insurance policy or by a relief association; employment benefits; gratuitous payments; social legislation benefits such as social security, welfare, pensions; and benefits received under certain retirement acts." Id. One ___ commentator has observed that "[t]he most obvious effect of the collateral source rule is that it `enables a plaintiff to reap a double recovery in certain circumstances.' In other words, `[t]he collateral source rule is an exception to the general rule that damages in tort should be compensatory only.'" Joel K. Jacobsen, The Collateral Source Rule and the __________________________________ ____________________ 17. "Properly analyzed, the collateral source rule is a substantive rule of damages and not a rule of evidence." Joel K. Jacobsen, The Collateral Source Rule and the Role of __________________________________________ the Jury, 70 Or. L. Rev. 523, 526 (1991); see, e.g., McInnis ________ ___ ____ _______ v. A.M.F., Inc., 765 F.2d 240, 245 (1st Cir. 1985) ("[I]t is ____________ well recognized that Congress did not intend the [Federal Rules of Evidence] to preempt . . . `substantive' state rules . . . such as the . . . collateral source rule . . . ."). In their Joint Pretrial Memorandum, the parties agreed that "New Hampshire tort law and contract law govern the legal rights and duties of all parties at issue herein." Accordingly, we will abide by New Hampshire's collateral source rule. -32- Role of the Jury, 70 Or. L. Rev. 523, 524 (1991) (quoting _________________ Chenoweth v. Schaaf, 576 F. Supp. 1556, 1558 (W.D. Pa. 1984) _________ ______ and Overton v. United States, 619 F.2d 1299, 1306 (8th Cir. _______ ______________ 1980) in that order).18 Although New Hampshire's collateral source rule serves substantive state policies, its application also affects the admissibility of certain evidence. Courts have held, for instance, that, under the Federal Rules of Evidence, "evidence of collateral benefits [ordinarily] has ____________________ 18. Courts have expressed various policy rationales for the collateral source rule. "Most fall into two broad categories. The rule is intended either (1) to punish the tortfeasor, or (2) to ensure that the injured party receives benefits for which he or she has contracted." Jacobsen, The ___ Collateral Source Rule and the Role of the Jury, supra note ________________________________________________ _____ 17, at 528. The Supreme Court of New Hampshire has summarized these rationales as follows: The basic argument advanced for [the rule's] application is that a tort-feasor should not be allowed to escape the consequences of his wrongful act merely because his victim has received a benefit from a collateral source which would constitute a windfall to the defendant wrongdoer. It is also pointed out that in many instances the plaintiff has paid for these benefits in the form of insurance premiums or concessions in the wages he received because of such fringe benefits. If such considerations are not present and the payments are gratuitous, it is maintained that the maker of these payments did not intend to relieve the tort-feasor of any liability, but rather to aid the plaintiff by doing him a favor. . . . It is also argued that the collateral source rule is designed to offset the inability of ordinary damages to adequately compensate an injured accident victim. Moulton v. Groveton Papers Co., 114 N.H. 505, 509-10, 323 _______ ____________________ A.2d 906, 909 (1974). -33- no relevance in the lawsuit," Phillips v. Western Co. of N. ________ __________________ Am., 953 F.2d 923, 930 (5th Cir. 1992), because the existence ___ of such benefits is of no consequence to the trier of fact's determination of damages. See Fed. R. Evid. 401. "Evidence ___ that is not relevant, of course, is not admissible. Fed. R. Evid. 402." Phillips, 953 F.2d at 930. ________ In some cases, however, federal courts, although subject to a state's collateral source rule, have allowed evidence of collateral payments when relevant to some other issue. Courts have allowed defendants to introduce evidence of collateral payments to show malingering or to rebut misleading testimony given on direct examination. See, e.g., ___ ____ DeMedeiros v. Koehring Co., 709 F.2d 734 (1st Cir. 1983) __________ ____________ (affirming the district court's decision to allow the defendants to introduce evidence that the plaintiff was receiving $185 per week in workers' compensation disability benefits for the limited purpose of proving the plaintiff's motivation in declining an employment opportunity); Lange v. _____ Missouri Pac. R.R. Co., 703 F.2d 322, 324 (8th Cir. 1983) _______________________ (finding that "evidence concerning [the plaintiff's] receipt of workers' compensation benefits was relevant to test the credibility of plaintiff's assertion that he had to return to work immediately after the surgery because he had no disability income"). Evidence of collateral payments has also been allowed on cross-examination after the plaintiff -34- has specifically referred to such payments on direct examination. Hannah v. Haskins, 612 F.2d 373, 375 (8th Cir. ______ _______ 1980) (affirming the district court's decision to allow the defendant on cross-examination to elicit information about collateral source payments referred to by the plaintiff on direct examination). Here, Storage Tank argues, citing Haskins, that the _______ district court erred in denying its request to cross-examine Doucette on the issue of disability benefits that Clausen received after the accident because Doucette had raised the issue of employee benefits on direct examination. We do not agree. Storage Tank's counsel sought permission to cross- examine Doucette as to "disability benefits that [Clausen] is currently receiving and any Social Security benefits." These were not the benefits Clausen and Doucette had testified were lost by reason of Clausen's injury Doucette mentioned Clausen's loss of "an annuity fund, a pension fund, and health and welfare, which is health insurance." The district court had good reason to think that Storage Tank was proposing to delve into different contemporary benefits in _________ order to persuade the jury to reduce its damages award by the amount of collateral payments that were currently being received from other sources by the disabled plaintiff. Preventing such inquiry was consistent with New Hampshire's collateral source rule. If Storage Tank had wished to -35- examine Doucette on the accuracy of his projections of Clausen's economic loss relative to the annuity fund, pension fund, and health insurance, it needed to say so, see infra, ___ _____ rather than merely saying it wanted to cross-examine about disability and social security benefits now being paid to Clausen. Storage Tank's reliance on Haskins is misplaced. _______ In Haskins, the plaintiff, on direct examination, had _______ testified that certain medical bills had been paid from collateral sources, namely, Blue Cross, Blue Shield, and Medicaid. The district court allowed the defendant's attorney to "elicit[] further information concerning the type and scope of the collateral source payments." Haskins, 612 _______ F.2d at 375. Here, by contrast, Clausen and Doucette never testified that Clausen was receiving collateral source payments (e.g., workers' compensation, union disability ____ benefits, or social security disability benefits). Rather, they testified that Clausen had permanently lost certain employee benefits by reason of his accident (i.e., "an ____ annuity fund, a pension fund, and health and welfare"). The district court could reasonably believe that Doucette's testimony concerning the purported value of particular benefits that Clausen had allegedly lost because of his injury did not "open the door" to cross-examination -36- concerning the receipt by Clausen of what appeared to be different benefits.19 We recognize that there is some force to Storage Tank's argument, relying on Lange, that, notwithstanding the _____ collateral source rule, it was entitled to cross-examine Doucette regarding Clausen's receipt of disability benefits to show that Clausen had not actually lost employee benefits as indicated by Doucette on direct examination. In this same vein, Storage Tank asserts that, had the district court permitted it to demonstrate on cross-examination that Clausen had not lost his employee benefits, it would have thereby impeached Doucette's credibility. We need not reach the merits of these arguments, however, because Storage Tank raises them for the first time on appeal. We have held that "[a] party may not claim error on appeal in the exclusion of evidence unless the district court was told not only what the party intended to prove but also for what purpose." Tate v. Robbins & Myers, Inc., 790 F.2d ____ ______________________ 10, 12 (1st Cir. 1986) (citing 1 Jack B. Weinstein & Margaret ____________________ 19. We note that "[t]rial judges retain broad discretion to impose reasonable limitations on the scope of cross- examination," United States v. Alvarez, 987 F.2d 77, 82 (1st _____________ _______ Cir.) (citing Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 ________ ___________ S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986)), cert. denied, ____________ 114 S. Ct. 147 (1993), and "[w]e review district court limitations on cross-examination for `abuse of discretion,'" United States v. Carty, 993 F.2d 1005, 1010 (1st Cir. 1993) _____________ _____ (quoting United States v. Boylan, 898 F.2d 230, 254 (1st _____________ ______ Cir.), cert. denied, 498 U.S. 849, 111 S. Ct. 139, 112 L. Ed. ____________ 2d 106 (1990)). -37- A. Berger, Weinstein's Evidence 103[03], at 103-33 (1985 ____________________ ed.) ("In making an offer of proof counsel must be careful to articulate every purpose for which the evidence is admissible; a purpose not identified at the trial level will not provide a basis for reversal on appeal.")). Accordingly, "if evidence is excluded because it is inadmissible for its only articulated purpose, the proponent of the evidence cannot challenge the ruling on appeal on the ground that the evidence `could have been rightly admitted for another purpose.'" Id. (quoting 1 Kenneth S. Broun et al., McCormick ___ _________ on Evidence 51, at [199 (1992)]). ___________ At trial, Storage Tank argued that it should be allowed to cross-examine Doucette about certain collateral source payments received by Clausen because he (Doucette) had referred during direct examination to other employee fringe benefits lost by Clausen after his injury. The district court rejected this argument. See discussion, supra. ___ _____ Counsel for Storage Tank at no time stated that the proffered evidence (i.e., that Clausen was receiving disability and ____ social security benefits) should be admitted either to show that Clausen had not, in fact, suffered damages through the loss of his annuity fund, pension plan, or health insurance, or to impeach Doucette's credibility. These arguments cannot, therefore, be entertained. -38- 3. Including Goudreau in the Proration of Fault ___________________________________________________ Instruction to the Jury _______________________ The parties filed with the district court a Joint Request for Special Jury Questions, which was signed by counsel for Clausen, Storage Tank, and Sea-3, and which formed the basis of the special verdict questions submitted to the jury. This document contained, among others, the following questions: 3.(a) Was Goudreau Corp. negligent? *** (b) If so, was the negligence of Goudreau Corp. a proximate cause of plaintiff's injury? *** 5. State in what percentage the plaintiff's negligence and defendants' negligence caused or contributed to the injuries alleged. Eric Clausen's negligence: ______% Storage Tank Development Corp.'s negligence: _____% Sea-3, Inc.'s negligence: ______% Goudreau Corp.'s negligence: ______% 100 % ______ Although counsel for Storage Tank and Sea-3 had signed-off on these questions, during a charging conference held on the afternoon of the third day of trial, counsel for Sea-3 objected to the inclusion of Goudreau on the special verdict -39- form. Specifically, counsel for Sea-3 argued to the district court that "we should not have Goudreau Corporation, because they're not a party to this case, and . . . to include them would confuse the jury with respect to finding liability against a party that's not here." Counsel for Sea-3 further asserted that "[m]y concern is that we have an [indemnity] action against Goudreau . . . [a]nd I don't want this jury's finding to be on that process [sic], and, hence, I object to its presence here." Counsel for Storage Tank neither joined in Sea-3's objection nor expressed any dissatisfaction whatsoever with the inclusion of Goudreau in the special verdict questions. Counsel for Sea-3 again raised his objection to Goudreau's inclusion in the special verdict questions just prior to the district court's charge to the jury. He maintained that his only problem with the special verdict questions was "the inclusion of Goudreau." Counsel for Storage Tank, on the other hand, stated that he had "no problem" with the special verdict questions and that he had "no objection" to the instructions. Notwithstanding Sea-3's objection, the district court did not exclude Goudreau from the special verdict questions, which were given to the jury in nearly identical form to the Joint Request for Special Jury Questions submitted previously by the parties. -40- On appeal, Storage Tank argues that the district court committed reversible error by allowing the jury to assign liability to Goudreau because Goudreau was not a party defendant at trial. It contends that the district court, by allowing the jury to apportion fault against Goudreau, violated N.H. Rev. Stat. Ann. 507:7-e, I(a) (1986), which orders the trial court to "[i]nstruct the jury to determine . . . the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties." Storage Tank interprets this statute to mean that it is impermissible for a trial court to instruct a jury to find the proportionate fault of a non-party. In this context, Storage Tank argues that Goudreau was not a party in its trial with Clausen, and, therefore, the district court, by virtue of 507:7-e, I(a), erred by instructing the jury to apportion fault against Goudreau. Clausen counters Storage Tank's argument by asserting that Storage Tank failed to preserve for appeal the issue that the district court did not comply with N.H. Rev. Stat. Ann. 507:7-e, I(a). He points out that Storage Tank not only asked that Goudreau be included in special verdict questions in the parties' Joint Request for Special Jury Questions, but also failed to object to the special verdict questions at any time during trial. We agree with Clausen. -41- Fed. R. Civ. P. 51 states, inter alia, that "[n]o __________ party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the ______________________ matter objected to and the grounds of the objection." ___________________________________________________________ (emphasis added). "This rule applies to special interrogatories as well as verbal instructions." Phav v. ____ Trueblood, Inc., 915 F.2d 764, 769 (1st Cir. 1990). We have _______________ held that a litigant who accedes to the form of a special interrogatory will not be heard to complain after the fact. . . . If a slip has been made, the parties detrimentally affected must act expeditiously to cure it, not lie in wait and ask for another trial when matters turn out not to their liking. Anderson v. Cryovac, Inc., 862 F.2d 910, 918 (1st Cir. 1988). ________ _____________ Here, Storage Tank acceded to the form of the special verdict questions; it participated in the parties' Joint Request for Special Jury Questions, and then informed the trial judge, just before he instructed the jury, that it had "no problem" with the special verdict questions. "It follows inexorably that [Storage Tank has] waived the right to press an objection on appeal." La Amiga del Pueblo, Inc. v. Robles, _________________________ ______ 937 F.2d 689, 692 (1st Cir. 1991); see Toscano v. Chandris, ___ _______ _________ S.A., 934 F.2d 383, 384-85 (1st Cir. 1991) ("[W]hen the ____ appellants sat idly by and allowed the court's instructions -42- to the jury to stand unchallenged, they waived the right to press the objections which they now attempt to advance."). Nor can we say that it was plain error for the district court to ask the jury in special verdict questions to assign fault to Goudreau. As we have noted, "[t]he plain error standard, high in any event, . . . is near its zenith in the Rule 51 milieu." Toscano, 934 F.2d at 385. "[I]t _______ applies only where the error results in a `clear miscarriage of justice' or seriously affects `the fairness, integrity or public reputation of judicial proceedings.'" Phav, 915 F.2d ____ at 769 (quoting Smith v. Massachusetts Inst. of Technology, _____ __________________________________ 877 F.2d 1106, 1110 (1st Cir.), cert. denied, 493 U.S. 965, ____________ 110 S. Ct. 406, 107 L. Ed. 2d 372 (1989)). In this instance, the district court's special verdict questions, if erroneous at all, did not reach the pinnacle of fault envisioned by the plain error standard.20 B. Alleged Post-Trial Errors B. Alleged Post-Trial Errors 1. Refusal to File Storage Tank's Renewed Motion for ___________________________________________________ Judgment as a Matter of Law and Denial of Storage ___________________________________________________ Tank's Motion for Judgment as a Matter of Law _____________________________________________ At the end of evidence, Storage Tank filed a Motion for Judgment as a Matter of Law, which the district court ____________________ 20. The Supreme Court of New Hampshire has not addressed the issue and it is unclear, insofar as we are aware, whether third-party defendants, who are not involved in the immediate trial involving the plaintiff and the defendant(s), are or are not "parties" as that term appears in N.H. Rev. Stat. Ann. 507:7-e. -43- denied. Within ten days after the entry of judgment, Storage Tank filed, pursuant to Fed. R. Civ. P. 50(b), a Renewed Motion for Judgment as a Matter of Law. The district court refused to file the later motion because it failed to include a certificate of compliance with U.S. Dist. Ct. R., D.N.H. 11(b).21 On appeal, Storage Tank assigns error to both of these decisions. a. Refusal to File Storage Tank's Renewed Motion ______________________________________________ for Judgment as a Matter of Law _______________________________ Storage Tank initially contends that the district court erred in refusing to file its Renewed Motion for Judgment as a Matter of Law for failure to comply with U.S. Dist. Ct. R., D.N.H 11(b). According to Storage Tank, Local Rule 11 does not apply to a Renewed Motion for Judgment as a Matter of Law. We disagree. U.S. Dist. Ct. R., D.N.H. 11(a)(1) states that "[m]otions other than during trial will be considered only if _________________________________ submitted separately from other pleadings on a document using the word `Motion' in the title. The Clerk shall not accept ____________________ 21. District of New Hampshire Local Rule 11(b) states: (b) SEEKING CONCURRENCE IN MOTIONS The moving party shall certify to the court that he has made a good faith attempt to obtain concurrence in the relief sought. If the moving party has obtained concurrence, he shall so state in the body of the motion so the court may consider it without delay. -44- any motions not in compliance with procedures outlined in these Rules." (emphasis added). Assuming, arguendo, that ________ the phrase "any motions" in the second sentence of Local Rule 11(a)(1) means "any motions other than during trial," the issue becomes whether a Renewed Motion for Judgment as a Matter of Law is a trial motion, which is not subject to Local Rule 11, or a "motion other than during trial," which is subject to Local Rule 11. Like the district court, we conclude that a Renewed Motion for Judgment as a Matter of Law, which may be filed as many as ten days after the entry of judgment, is a "motion other than during trial" that must comply with the strictures of Local Rule 11(b). Accordingly, the district court was entitled to enforce its local rule by refusing to file Storage Tank's Renewed Motion for Judgment as a Matter of Law, and we cannot say that, by doing so, it engaged in a clear injustice. See Atlas Truck Leasing, Inc. ___ _________________________ v. First NH Banks, Inc., 808 F.2d 902, 903 (1st Cir. 1987) _____________________ ("We will reverse [the district court's] determination only if the ruling results in clear injustice."). We note, in this regard, that Storage Tank's proffered Renewed Motion for Judgment as a Matter of Law was virtually identical to its earlier Motion for Judgment as a Matter of Law, denial of which is reviewable on appeal. b. Denial of Storage Tank's Motion for Judgment ______________________________________________ as a Matter of Law __________________ -45- Appellate review of the denial of a Motion for Judgment as a Matter of Law is limited. As has often been said, "we must examine the evidence in the light most favorable to the plaintiff and determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion that there is a total failure of evidence to prove the plaintiff's case." Fact Concerts, Inc. ___________________ v. City of Newport, 626 F.2d 1060, 1064 (1st Cir. 1980), ________________ vacated on other grounds, 453 U.S. 247, 101 S. Ct. 2748, 69 ________________________ L. Ed. 2d 616 (1981), quoted in Gonzalez-Marin v. Equitable _________ ______________ _________ Life Assurance Soc'y of the United States, 845 F.2d 1140, ___________________________________________ 1144 (1st Cir. 1988); Mayo v. Schooner Capital Corp., 825 ____ _______________________ F.2d 566, 568 (1st Cir. 1987). Moreover, "`we may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.'" Putnam ______ Resources v. Pateman, 958 F.2d 448, 459 (1st Cir. 1992) _________ _______ (quoting Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. _________ _____ 1987)). In its Motion for Judgment as a Matter of Law, Storage Tank argued that it could not be found liable because (1) the danger to Clausen was obvious and he failed to ensure his own safety, and (2) Storage Tank had no notice of the dangerous condition. On appeal, Storage Tank raises two additional arguments not made in its Motion for Judgment as a Matter of Law. First, it contends that Clausen's trial -46- testimony unequivocally established that he fell on staging planks that had been placed over the existing ramp. Consequently, Storage Tank maintains that, because it did not either own or control staging planks or receive notice that staging planks had been placed over the existing ramp there was insufficient evidence upon which a reasonable jury could have found Storage Tank negligent. Second, Storage Tank asserts that "Goudreau . . . assumed responsibility for the safety of the work area pursuant to the written contract." We decline to reach the merits of these freshly raised arguments, however, because "[a]ppellate review may be obtained only on the specific ground stated in the motion for directed verdict." Wells Real Estate, Inc. v. Greater Lowell _______________________ ______________ Bd. of Realtors, 850 F.2d 803, 810 (1st Cir.) (citing _________________ Pstragowski v. Metropolitan Life Ins. Co., 553 F.2d 1, 3 (1st ___________ __________________________ Cir. 1977)), cert. denied, 488 U.S. 955, 109 S. Ct. 392, 102 _____________ L. Ed. 2d 381 (1988). With regard to whether Clausen was contributorily negligent for failing to observe an obvious danger, we find sufficient evidence upon which a reasonable jury could find that he was not. Clausen was injured on his first day on the job and on his first trip down the ramp. He, therefore, had no prior personal experience with the slippery condition of the ramp. Moreover, Clausen testified that the one-half-inch sheet of ice that caked the ramp was concealed by snow and -47- that nobody had told him prior to the accident about the presence of ice on the ramp. Similarly unavailing is Storage Tank's contention that it is entitled to judgment as a matter of law because it did not receive notice of the ramp's dangerous condition or an opportunity to take remedial action. Because there was evidence at trial from which the jury could reasonably find that Storage Tank knew or should have known that ice and snow would accumulate on the ramp and that Storage Tank was responsible for taking action to clear the ramp, the jury "could likewise find that reasonable care required that [Storage Tank] should have taken such action." Tremblay v. Donnelly, 103 N.H. 498, 500, 175 A.2d 391, 393 ________ ________ (1961). We decline to disturb the district court's conclusion that Clausen presented evidence sufficient for a reasonable jury to find Storage Tank negligent. 2. Denial of Storage Tank's Motion to Alter or Amend ___________________________________________________ Judgment ________ Storage Tank maintains that the district court erred in denying its Motion to Alter or Amend the Judgment, which asserted that the jury's verdict was grossly excessive, not supported by the facts, and subject to remittitur. Having considered Storage Tank's argument and the record before us, we cannot say that the jury's verdict of $1,426,000 was so exorbitant that the district court abused its discretion by denying Storage Tank's request for remittitur. See, e.g., American Business Interiors, Inc. v. ___ ____ _________________________________ -48- Haworth, Inc., 798 F.2d 1135, 1146 (8th Cir. 1986) (holding _____________ that, because "the trial court has heard the evidence and knows the community's standards, [a court of appeals] will reverse a denial of remittitur only when in rare circumstances [it is] pressed to conclude that the verdict represents a monstrous or shocking injustice"). The judgment of the district court is affirmed. __________________________________________________ Costs to appellee. _________________ -49-