Deborah REAGAN, Plaintiff, Appellant,

v.

Alice BROCK, d/b/a Alice's At Avaloch and Avro Properties, Inc., Defendant, Appellee.

No. 79–1641.

United States Court of Appeals, First Circuit.

Argued May 8, 1980.

Decided Aug. 21, 1980.

---

Kathleen Sullivan, Boston, Mass., with whom Andrew C. Meyer, Boston, Mass., was on brief, for plaintiff, appellant.

* Sitting by designation.

Francis Leone, Boston, Mass., with whom Jacob J. Locke and Ficksman & Conley, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, and DAVIS, Judge, U. S. Court of Claims.*

COFFIN, Chief Judge.

Plaintiff brought an action in the United States District Court for the District of Massachusetts alleging that defendant's restaurant negligently and in breach of the warranty of merchantability served her unfit food and thereby caused her to become seriously ill. At the close of the evidence, the court directed a verdict for defendant on the negligence court. The jury found that defendant did not breach any warranty by serving plaintiff contaminated food. Plaintiff attempts here to revive her claim by arguing that the district court committed several erroneous evidentiary rulings. We affirm.

We begin with what we perceive to be plaintiff's most substantial argument. At one point, the defendant was testifying about how she came to know of plaintiff's illness, and the following ensued under questioning from her counsel:

"Q Now, sometime around August 29th or 30th did you receive a telephone call from someone relating to the plaintiff?

A Yes, I did.

Q And who was that; can you identify the person?

A Somebody named Allen from the theater.

Q You don't know his last name?

A No.

Q And what did he say to you with reference to this incident?

A He said that Deborah had eaten there the other night and she had gotten ill and he thought it was from the food.

Q And what did you say?

A I asked what she had eaten and where she was.

Q And did you find out where she was?

A Yes, she was in the Pittsfield Hospital and I—

Q What did you do?

A I got the name of the doctor and I called him and spoke to him.

Q What was the result of your conversation?

A Well, he said that from the tests they had done that there was no reason to believe that her problem had anything to do with the food.

[Plaintiff's counsel]: I object and move that be stricken.

THE COURT: I will let it stand. Could have been objected to before the question was answered.

[Plaintiff's counsel]: Note my exception."

Plaintiff now argues that the district court erred in ruling that her counsel should have objected to the question rather than to the answer because the question does not strictly call for a hearsay response. Although we agree with plaintiff that the question is susceptible of an interpretation that does not call for an inadmissible answer, we do not think that the court committed reversible error.

If defendant's lawyer had asked her, "What did the doctor say to you?", the question would clearly have called for a hearsay response and plaintiff would have waived any objection to the answer if her counsel had not objected to the question. "[C]ounsel is not allowed to gamble upon the possibility of a favorable answer, but must object to the admission of evidence as soon as the ground becomes apparent. Usually this will be as soon as the question is asked, assuming that the question shows that it calls for inadmissible evidence." McCormick, Evidence § 52 at 115 (1954). The question we must address here is whether the court clearly erred in finding that the question in controversy called for an inadmissible answer. We hold that it did not.

Reviewing the cold transcript of the hearing, one must admit that the question in controversy is ambiguous: "What was the result of the conversation?" Nonetheless, our ability to comprehend how this question was understood in the courtroom is vastly inferior to the district judge's. He hears the question with counsel's inflection, perceives the length and character of the pause between question and answer, and rules on the party's objection within the context of prior questioning and strategies. A district court's ruling on whether an ambiguous question calls for an inadmissible answer should not be reversed as clear error when its ruling has a reasonable basis. *See Sweeney v. Board of Trustees of Keene State College*, 604 F.2d 106, 109 n.2 (1st Cir. 1979) (clearly erroneous standard applies to questions of mixed law and fact; standard particularly appropriate for questions whose resolution depends on the court's opportunity for firsthand observation).

Here, the transcript demonstrates that the witness had been offering hearsay testimony just before the question in controversy was asked. Plaintiff objected to none of the previous questions or answers and the court could have well thought that plaintiff withheld objection because the testimony given was favorable to her claim. The inquiry about the result of the conversation between defendant and plaintiff's doctor seems more likely to have called for a hearsay response since the defendant's immediately prior testimony had been hearsay. Moreover, the court had seen plaintiff remain silent during the admission of favorable hearsay and could have perceived him as gambling that the hearsay responses would continue to be favorable. Thus, the context within which the question was asked gives substance to the court's determination that the question called for a hearsay response. Plaintiff offered no reason to the court for her failure to object to the question and thereby failed to develop any basis in the record for negating our perception that the court's ruling was properly based on the context in which the question was asked. *Cf.* Fed.R.Evid. 103(a) (specific objections must be made to rulings

on evidence so court may correct errors). The ruling was not clearly erroneous.

■ Plaintiff's other arguments are more easily answered. Plaintiff ate the allegedly contaminated meal in the summer of 1976. Early in the trial the district court ruled that records pertaining to health code violations at defendant's restaurant the following summer were irrelevant to the question of liability. Plaintiff then attempted to introduce this same and similar evidence to impeach defendant's testimony that her kitchen was clean and orderly. The district court repeatedly excluded such evidence because it found that defendant had testified only about kitchen conditions during the summer of 1976. These rulings were within the discretion of the district court, which must both set the scope of cross-examination and balance the probative value and prejudicial effect of each piece of evidence offered and objected to. *See* Fed.R.Evid. 403, 611(b); *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir. 1975). It is evident that evidence about various code violations at the restaurant at times unrelated to the episode being litigated could have a greater impact on the passions than on the reason of the jury. This is true whether the evidence is offered as direct evidence about the manner of storage and preparation of food or to impeach testimony about this same subject. The district court did not commit reversible error in excluding this evidence.

■ Finally, we find that any error the court may have committed in permitting defendant's counsel to mention during his closing argument that plaintiff had not called her treating physician to testify was harmless. Evidence had already been admitted which tended to establish that the treating physician did not diagnose plaintiff to have been poisoned by food. Moreover, plaintiff's counsel had the opportunity and attempted in his closing argument to rebut the inference the jury could have drawn from the physician's absence at trial.

*Affirmed.*