USCA1 Opinion

 

 February 9, 1996 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1438 KAREN STOCKWELL, ET AL., Plaintiffs, Appellants, v. MICHAEL SWEENEY, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Neil P. Philbin with whom Kirshenbaum & Kirshenbaum was on brief _______________ __________________________ for appellants. Joseph F. Penza, Jr. with whom Olenn & Penza, and Kevin F. ______________________ _______________ _________ McHugh, Assistant City Solicitor, were on brief for appellees. ______ ____________________ ____________________ ALDRICH, Senior Circuit Judge. Plaintiff ________________________ appellants are the widow and administratrix of the estate of George Stockwell (Stockwell) and the Stockwells' minor daughter. Defendants are Michael Sweeney and the City of Providence, Rhode Island. On May 6, 1993, while acting as a traffic officer of the City, Sweeney shot and killed Stockwell, a driver of an automobile. Plaintiffs sue under 42 U.S.C. 1983 and Rhode Island's wrongful death statute (concededly raising the same issue), alleging that the officer's use of deadly force was an unreasonable, unjustified violation of Stockwell's Fourth Amendment rights. Plaintiffs' appeal, following a jury verdict in favor of defendants, advances three principal claims: (1) the evidence warranted judgment as a matter of law in their favor, (2) the court's instructions regarding deadly force were too favorable to defendants, and (3) the court erroneously admitted testimony concerning Stockwell's alleged belligerent behavior shortly before the encounter. They further appeal denial of post trial motions on the same grounds. We affirm. Directed Finding ________________ Plaintiffs introduced eight eyewitnesses, no two of whom fully agreed with each other. All, in one way or another, disagreed with Sweeney, although some partially supported him. Plaintiffs' conclusion that their testimony -2- was "unequivocal, uncontradicted and unimpeached" and that the finding in favor of defendants was so "nonsensical" that it should have been directed for plaintiffs could be answered in one sentence: We fully agree with the district court's statement that the evidence presented a "classic question of fact." It is a rare case where a verdict can be ordered in favor of the party having the burden of proof, and this is far from such. However, as the evidence bears also upon the question whether plaintiffs' case was prejudiced by a less than perfect charge, we will recount it to some extent. First, it was tacitly or expressly accepted that Sabin Street, Providence, runs, one way, east to west, and intersects with Mathewson; that Sweeney, in uniform, was on duty at this intersection to direct cars bound west on Sabin Street to turn left onto Mathewson because of a children's affair ahead on Sabin, and that Stockwell wished to continue on. At some point the officer drew his service revolver and shot Stockwell in the groin, the bullet "moving from right to left, and from front to back." (Surgeon). Stockwell, hospitalized, died in a few hours. Concededly this is an unusual case. According to Officer Sweeney, Stockwell, who was approaching fast, slowed down at his signal, ultimately to a pace, but continued on into the officer, pushing him backward a couple of feet. Sweeney yelled repeatedly for Stockwell to stop, but -3- Stockwell, shouting, "Get out of my way or I'll f'n run you over," hit him again, this time causing his torso to collapse over the hood and his right leg to rise into the air. Within seconds Sweeney, in fear, reached for his gun and fired a single shot at Stockwell, aiming through the windshield. At this time the car began turning to the left, in effect moving Sweeney to the right. (Cf. Carlson, post.) Although he ___ ____ insisted that he aimed through the windshield, the bullet came through the open window on the passenger side. On this discrepancy, though physically understandable on the basis of the car's movement, plaintiffs hang their as-matter-of-law claim. First, plaintiffs' witnesses, briefly. (Stockwell will be referred to as the "car," and Sweeney as the "officer.") Joanna Johnson (school bus passenger) ______________ Officer stepped away from in front of the car, pushing his hand against the right front fender. Car proceeded and, after it had passed officer by "a few steps," stopped, at which point officer drew his gun and "ran up to the passenger side of the car . . . [and] put his gun in the window . . . and I heard a noise which I assumed was a gunshot." Susan Winsor (bus passenger) ____________ -4- First saw officer chasing car, trying to grab onto it and yelling "Stop!" "The car had turned onto the side street, and the officer was on the passenger side. He got up to about midway, maybe like at the cross pieces between the two windows. And he looked like he was trying to hold on at one point with both hands. And then he slipped away from the car and that's when I heard a shot." Kenneth Carlson (driver of car directly behind ________________ Stockwell) Saw officer gesture to car to detour but "car accelerated really quickly, threw the policeman up onto the hood." Car turned to the left, throwing officer around to the passenger side of the car, when Carlson saw officer, previously empty-handed, holding a gun. On contemporary statement to police Carlson had stated that officer had run six feet along the side of the car before pulling his gun and firing into the car; and by deposition that he ran after the car two or three feet. Melissa Iannotti (automobile driver) ________________ Stated on direct examination she saw officer make slow run after the car, "about a few car lengths." "I remember his hands on the car and I heard pop." On cross stated she saw the car turn to the right towards the officer. Saw him place his hands on the hood. Thought maybe his feet -5- were run over, and that the gun was inside the passenger window of the car when officer fired. -6- Richard Heines (children's bus driver) ______________ Saw officer with his back against the back window of the car, pivot and fire through "the passenger side window" and then rotate back again. (Obviously car not moving.) David Mello (automobile driver) ___________ Had passed into Mathewson Street ahead of car, saw officer, through side-view mirror, bumped, hands onto the hood, dead center. Officer moved towards passenger side, at headlight was "bumped again, a little harder this time, causing him to come down onto the hood this way and then he stepped around the side of the car." The car was moving slowly and while standing at fender, passenger side, officer drew his gun and, after car moved a couple of feet more, fired. Entire incident took about 30 seconds. Kim Maddalena (passenger in school bus) _____________ After car took slow left-hand turn onto Mathewson, officer chased car from behind. Then, "I saw him take a stance, spread his legs apart, and take his gun out of his holster and hold it like this and he shot into the passenger side front window." Debra Lusignan (passenger in school bus) ______________ After officer gestured, car stopped. Saw some kind of argument between car and officer that lasted a few minutes. Then made tight left turn, brushing past officer, -7- and officer pushed himself away. As car proceeded officer banged on rear window and yelled stop, and when car did not stop officer ran after it for two or three car lengths, drawing his gun. He then stuck gun inside front passenger window and fired. Comment _______ So much for what plaintiffs consider "minor inconsistencies on trivial matters." Testimony that placed Sweeney as coming from behind would seem clearly inconsistent with a bullet entering the front of the groin and out the back; indeed that point of entry might be thought odd for anyone on foot at the car's side. Plaintiffs' only reference to the path of the bullet is to say that "the absence of exactitude in identifying the specific locations of the parties and vehicle is . . . insubstantial on the issue of whether Sweeney had to shoot Stockwell in order to defend his life." Seemingly there is no difference between shooting from the hood when one has been picked up on a moving car, and shooting from the side, after coming from behind in a chase, or standing alongside, legs spread, and both hands on the gun. Again, there is no difference between being hit, center hood, by an oncoming car, (two witnesses, one said once, one twice)1, and chasing a car that had disobeyed a  ____________________ 1. Plaintiffs' brief characterizes inescapable testimony as "brushes," a word never used by a witness, and fails to mention Sweeney's (inescapable) medical records, which show -8- traffic order. The correctness of the denial of plaintiffs' motion for judgment is manifest. Jury Instructions _________________ It is conceded that the court correctly instructed the jury that, in order to establish that the officer's decision to shoot was an unlawful or unreasonable seizure in violation of Stockwell's Fourth Amendment rights, the plaintiffs had to prove, first, that "that Officer Sweeney intentionally shot Mr. Stockwell," and second, "that in shooting [him] Officer Sweeney acted in a way that was not objectively reasonable under the circumstances." The establishment of the first element was uncontested; the second received the following amplification by the court (contested portions emphasized): The standard for determining whether the use of deadly force by a police officer was objectively reasonable is whether under the circumstances confronting that officer a reasonable police officer would have used such force. The law permits a police officer to use deadly force to the extent necessary to protect himself or others from death or serious bodily injury. The law also permits a police ____________________________________ officer to use deadly force when it is _________________________________________ necessary to prevent the escape of a _________________________________________ suspected felon if the officer has _________________________________________ reasonable cause to believe that the _________________________________________ suspect poses a significant threat of _________________________________________  ____________________ him work disabled for three months. -9- death or serious bodily injury to the _________________________________________ officer or to other persons. ____________________________ Assault with a dangerous weapon is a ____________________________________ felony. Intentionally striking someone _________________________________________ or attempting to strike someone with a _________________________________________ motor vehicle constitutes an assault with _________________________________________ a dangerous weapon. ___________________ In determining whether a reasonable police officer would have considered it necessary to use deadly force, you must focus on the circumstances confronting that officer at the time the deadly force was used, rather than on how those circumstances may appear given the benefit of hindsight which, of course, is always twenty-twenty. Allowances must be made to the extent that a police officer is forced to make split-second decisions under circumstances that may be tense or uncertain or rapidly changing. The court's mentioning the law as to preventing escape was irrelevant, but, by the same token, we cannot believe a jury, addressing itself to Sweeney's asserted fear of serious bodily injury would be led astray. Of more possible concern is that the court's definition of an automobile used for an intentional striking (passing what may be implicit in that strong word) was an incomplete statement of Rhode Island criminal law. In State v. Mercier, 415 A.2d _____ _______ 465, 467 (R.I. 1980), the court said, An automobile in and of itself is not considered a dangerous weapon, but it may become so if it is employed in such a manner to render it capable of inflicting death or serious bodily injury. We do not, however, have a criminal case. The jury was not concerned with legalese, but with substance -- was Sweeney, a -10- traffic officer assigned to protect children from oncoming cars, faced with a driver so determined that he ran into him twice, the second time harder (Sweeney and Mello), reasonable in fearing for his safety? We cannot think that judicial definitions were in the jurors' minds, or affected the essential fairness of the trial. Elwood v. Pina, 815 F.2d ______ ____ 173, 177 (1st Cir. 1987). Evidence of Prior Conduct _________________________ Anthony Sajowski, a security guard in a nearby building, had encountered Stockwell shortly before the shooting incident. A conversation took place that defendants, before trial, gave notice they intended to introduce. Plaintiffs filed a motion in limine contending __________ that its substance was, in effect, character evidence, Fed.R.Evid. 404(b), and, further, that it should be excluded because the danger of unfair prejudice substantially outweighed any probative value. Fed.R.Evid. 403. The court denied the motion "without prejudice" to the right to object at trial, noting that "everyone is aware of what the potential problems are and we will just have to deal with that based on the evidence as it is presented." At trial Sajowski testified, over periodic objections on other grounds, that Stockwell had disregarded his authority, rebuffed his assistance, was "aggravated" and had several times "towered over" and confronted him in a provocative and -11- belligerent manner, and that he had felt sufficiently threatened to request local police assistance. No objections for any of the reasons put forth in the motion in limine were _________ made. Plaintiffs regard the motion as preserving the issues raised therein for appeal. Our rule is that the filing and denial of a motion in limine, without subsequent contemporaneous objection at __________ trial, will normally not preserve an evidentiary ruling for appeal. Clausen v. Sea-3, Inc., 21 F.3d 1181, 1189-1190 (1st _______ ___________ Cir. 1994) (citing cases). Here the court very plainly indicated that plaintiffs should renew their objections as the evidence came in. Undo prejudice, Fed.R.Evid. 403, in particular is a highly subjective matter, and plaintiffs' failure to object -- it is not for the court to remember -- deprived the court of its requested opportunity to rule on the precise record. See Freeman v. Package Machinery Co., ___ _______ ______________________ 865 F.2d 1331, 1337-38 (1st Cir. 1988). Plaintiffs invoke the doctrine of plain error that permits late raising. See Arrieta-Agressot v. United States, ___ ________________ _____________ 3 F.3d 525, 528 (1st Cir. 1993); Clausen, 21 F.3d at 1190- _______ 1191. The first question is whether it was error at all. Plaintiffs have had a four day trial, with many witnesses. We are especially hesitant to say from our poor vantage point, see Reagan v. Brock, 628 F.2d 721, 723 (1st Cir. ___ ______ _____ 1980), that plaintiffs should have a new trial because it -12- would have been an abuse of discretion for the court not to have found that the prejudicial effect of this testimony substantially exceeded its possible relevance. Instead, it is at least arguable that this was not a case where defendants were offering to show that Stockwell was of a belligerent character as permitting an inference that he was in character on this occasion. Rather, it would be open here to find that actual belligerence of a few moments ago does not evaporate instanter, particularly when faced with further opposition and conflict. The evidence could be thought direct, rather than inferential. On such a basis there was no error. Alternatively, if it be thought we are mistaken, and there was error, the term "plain error" means what it says, "clear," "obvious," United States v. Olano, 507 U.S. ______________ _____ 725, ___, (1993); 113 S.Ct. 1770, 1777 (1993); "particularly egregious:" Clausen, 21 F.3d at 1191. This it was not. _______ Affirmed. _________ -13-