# United States Court of Appeals
## For the First Circuit

No. 05-1905

ESTATE OF ARTHUR M. BARRETT BY ELAINE BARRETT,
IN HER CAPACITY AS ADMINISTRATRIX OF THE ESTATE OF
ARTHUR M. BARRETT,

Plaintiff, Appellant,

v.

UNITED STATES, ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Reginald C. Lindsay, U.S. District Judge]

---

Before

Lipez and Howard, Circuit Judges,
and Hug,[*] Senior Circuit Judge.

---

Earle C. Cooley, with whom Kevin M. Glynn and Cooley Manion Jones LLP were on brief, for appellant.

Joshua Waldman, Appellate Staff Attorney, with whom Peter D. Keisler, Assistant Attorney General, Michael J. Sullivan, United States Attorney, and Robert S. Greenspan, Appellate Staff Attorney, were on brief, for United States.

Stephen C. Pfaff, with whom Douglas I. Louison, Merrick, Louison & Costello, LLP, William A. Brown, Alan D. Rose, Alan D. Rose, Jr., Richard E. Bowman, Rose & Associates, Brian P. Fitzsimmons, Hanley, Hassett & Fitzsimmons, LLC, Christine M. Roach, and Roach & Carpenter, PC were on brief, for appellees Roderick Kennedy, Robert Fitzpatrick, James Ring, James Ahearn, and James Greenleaf.

---

[*]Of the Ninth Circuit, sitting by designation.

September 7, 2006

**LIPEZ**, **Circuit Judge**. This case is the latest in a series of tragic cases arising out of the FBI's mishandling of informants drawn from organized crime. Elaine Barrett (or "Plaintiff"), in her capacity as administratrix of the estate of her deceased husband, appeals from the dismissal of her claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680 (2000), the Fourth and Fifth Amendments to the Constitution, and Massachusetts' wrongful death statute, Mass. Gen. Laws ch. 229, § 2, due to her failure to file within the applicable two- and three-year statutes of limitations. The government and the individual defendants ("Defendants") argue that we have no jurisdiction to review the dismissal of these claims and, alternatively, that Plaintiff's claims are time-barred.

While we recognize the tragedy experienced by Barrett and his loved ones, the technical requirements of the FTCA and related laws are clear, they serve important purposes, and we are bound to follow them. Although we have jurisdiction to consider this appeal, we do not have jurisdiction to review Plaintiff's FTCA claim against the government because Plaintiff did not exhaust her administrative remedies. Plaintiff's constitutional and wrongful death claims likewise fail because Plaintiff waited more than three years to file her complaint after the accrual of her cause of action. We therefore affirm the district court's orders of dismissal appealed from on June 14, 2005.

In 1983, Plaintiff's spouse was kidnapped and murdered by James Bulger, Stephen Flemmi, and Kevin Weeks. The Federal Bureau of Investigation ("FBI") protected Bulger and Flemmi, both of whom served as confidential informants for the FBI, from arrest, prosecution, and investigation for this and other crimes in order to maintain them as confidential informants. On September 15, 1999, the District Court of Massachusetts (Wolf, J.) issued a decision in United States v. Salemme, 91 F. Supp. 2d 141 (D. Mass. 1999), which discussed the FBI's relationship with Bulger and Flemmi and the protection from criminal prosecution that the agency afforded them. The Salemme decision specifically mentioned Bulger's and Flemmi's slaying of Barrett, and noted that the FBI had been informed that Bulger was responsible for Barrett's murder. Id. at 257-57. In January 2000, Barrett's body was exhumed from a gully alongside the Southeast Expressway in Dorchester, Massachusetts, although post-mortem determinations and procedures sufficient to identify and permit release of his remains were not completed for another three months. On March 9, 2000, in response to the reported positive identification of Barrett's remains, Plaintiff told reporters that, "I think the government is responsible because if they put them away when they should have, Bucky would be alive today. They gave them a license to kill and

do whatever they wanted."  Barrett's body was released to Plaintiff on April 3, 2000.

On January 14, 2003, Elaine Barrett, Arthur Barrett's widow and the administratrix of his estate, presented to the government (i.e., the Department of Justice ("DOJ") and the FBI) an administrative tort claim under the FTCA, notifying the government of "Barrett's injuries and wrongful death caused by the negligent and wrongful acts or omissions of [its] employees."  On April 2, 2003, before the government denied the administrative claim and before six months had passed, Plaintiff filed a complaint in the U.S. District Court of Massachusetts, seeking redress from the government pursuant to the FTCA, and seeking redress from eight former FBI agents, James Bulger, Stephen Flemmi, and Kevin Weeks pursuant to the Fourth and Fifth Amendments (under Bivens v. Six Unknown Agents of the Fed'l Bureau of Narcotics, 403 U.S. 388 (1971))[1] and Massachusetts' wrongful death statute.  On April 15, 2003, the DOJ denied the FTCA claim as untimely based on the FTCA's two-year statute of limitations.

In November 2003, the government filed a motion to dismiss.  Former FBI agents John Morris and Robert Fitzpatrick filed motions to dismiss in December 2003 and January 2004,

---

[1] "The Bivens doctrine allows constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law."  McCloskey v. Mueller, 446 F.3d 262, 271 (1st Cir. 2006).

-5-

respectively.  On September 28, 2004, the district court, in a written opinion, dismissed Plaintiff's claims against the government as untimely under the FTCA's two-year statute of limitations, and against Morris and Fitzpatrick as untimely under the applicable three-year statute of limitations for Plaintiff's Bivens and wrongful death claims.  On October 28, 2004, Plaintiff appealed the September 28, 2004 Order.

On December 1, 2004, "for the reasons set forth in the [September 28, 2004 Order]," the district court dismissed Plaintiff's claims against John J. Connolly, Jr. and James Ahearn. On April 14, 2005, we dismissed Plaintiff's October 28, 2004 appeal "on the ground that we lack jurisdiction absent certification under Fed. R. Civ. P. 54(b)."

The following day, on April 15, 2005, the district court dismissed Plaintiff's claims against the three remaining FBI agents:  James Ring, James Greenleaf, and Rod Kennedy.[2]  One month later, on June 14, 2005, Plaintiff appealed this order, together with "each previous order of dismissal entered in this action," i.e., the September 28, 2004 Order and the December 1, 2004 Order. That same day, Plaintiff filed in the district court a motion for entry of immediate judgment against the dismissed defendants.  The district court dismissed this motion without prejudice "in the

[2]  Plaintiff's claim against former agent H. Paul Rico terminated by law on September 29, 2004 as a result of his death.

-6-

absence of the filing of a set of proposed findings that meet the requirements of Fed. R. Civ. P. 54(b)." Plaintiff did not file any set of findings. Thus, the district court did not direct the entry of judgment against the dismissed defendants pursuant to Fed. R. Civ. P. 54(b).

On July 22, 2005, we issued an order responding to the June 14, 2005 appeal, stating that "[b]ecause the orders of dismissal do not appear to be appealable final orders[,] and claims against other defendants remain pending in the district court, this court does not appear to have jurisdiction to consider this appeal absent certification pursuant to Fed. R. Civ. P. 54(b)." We also noted that "the notice of appeal as to 'each previous order of dismissal entered in this case'" – i.e., the September 28, 2004 Order and the December 1, 2004 Order – "appears to be untimely" because it was not filed within 60 days of the order from which it was appealed, as required by Fed. R. App. P. 4(a)(1). We thus required Plaintiff to move for voluntary dismissal or show cause why the appeal should not be dismissed. Plaintiff filed a showing of cause. On September 20, 2005, we issued an order "allow[ing] the case to proceed for now, without prejudice to reconsideration of the jurisdictional question by the merits panel."[3]

---

[3] Three of the eight former FBI agents sued by Plaintiff did not join Defendants' opposition brief: Morris, Connolly, and Rico (deceased).

On September 27, 2005, the district court issued notices of default against Bulger, Flemmi, and Weeks. The following day, on September 28, 2005, the district court vacated the notice of default against Bulger because "no service ha[d] been made," and entered final judgment "in favor of defendants against Plaintiff" on September 28, 2005, pursuant to Fed. R. Civ. P. 58.[4] Plaintiff did not appeal the entry of final judgment, but rather continued to rely for her appeal on the notice of appeal filed on June 14, 2005.

## II.

We review the district court's grant of Defendants' motions to dismiss <u>de</u> <u>novo</u>. <u>Patterson</u> v. <u>United States</u>, 451 F.3d 268, 270 (1st Cir. 2006). In so doing, we "tak[e] the allegations in the complaint as true and mak[e] all reasonable inferences in favor of plaintiff." <u>Doran</u> v. <u>Mass. Turnpike Auth.</u>, 348 F.3d 315, 318 (1st Cir. 2003). We may affirm on any basis supported by the record. <u>Carroll</u> v. <u>Xerox Corp.</u>, 294 F.3d 231, 241 (1st Cir. 2002).

**A.      Appellate Jurisdiction**

**1.      Timeliness of Notice of Appeal**

Courts of appeals may only hear appeals from "final decisions" of district courts. 28 U.S.C. § 1291. "[T]he term 'final decision' normally refers to a final judgment." <u>Sell</u> v. <u>United States</u>, 539 U.S. 166, 176 (2003). "[A] judgment is final

---

[4] No final judgment appears to have been entered against Bulger and the fifty John Doe defendants, who were never served.

only where it 'leaves nothing for the court to do but execute the judgement.'" Consol. Rail Corp. v. Fore River Ry. Co., 861 F.2d 322, 325 (1st Cir. 1988) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). It is undisputed that the district court entered a final judgment against all Defendants on September 28, 2005. It is also undisputed that Plaintiff did not appeal that final judgment. Instead, Plaintiff relied on the notice of appeal filed on June 14, 2005 -- more than three months prior to the entry of final judgment. In order to exercise jurisdiction over this action, we must find that either: (1) the June 14, 2005 appeal was timely because the orders of dismissal underlying that appeal were final; or, if the orders were not final (2) the premature appeal ripened into a timely notice of appeal following the entry of judgment on September 28, 2005.

### a.    Finality as of June 14, 2005

### i.    Rule 54(b) Certification

When a plaintiff sues multiple parties and a district court disposes of the claims against some but not all of the defendants, the district court's decision is ordinarily not a final, appealable judgment unless the district court separately certifies judgment against the relevant defendants pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. See Nichols v. Cadle Co., 101 F.3d 1448, 1449 n.1 (1st Cir. 1996). The district court did not certify judgment against any of the defendants on

either June 14, 2005 or any time thereafter.  As Defendants note, the district court could have certified a final judgment as to those defendants dismissed prior to the June 14, 2005 appeal pursuant to Rule 54(b), and that partial judgment would have been appealable.  But the district court did not do that.  In fact, the district court denied Plaintiff's motion to certify a final judgment pursuant to Rule 54(b) in the absence of the filing of a set of proposed facts that complied with that Rule.  Therefore, the orders of dismissal appealed from on June 14, 2005 did not become final by virtue of Rule 54(b), and are not appealable on that basis.

### ii.  Served Versus Unserved Defendants

Plaintiff contends that even though the district court did not certify that the orders appealed from on June 14, 2005 were final pursuant to Rule 54(b), these orders were nevertheless final because they disposed of the claims against all of the defendants who were served with process.  According to Plaintiff, "[i]t is widely agreed that defendants who have not been served with process are not counted [for purposes of finality]; a disposition as to all those who have been served is final" (quoting 15A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3914.7 (2d ed. 1992)).  See Manley v. City of Chicago, 236 F.3d 392, 395 (7th Cir. 2001) (holding that presence of unserved defendant does not defeat finality); accord Cooper v. Pickett, 137 F.3d 616, 621-

-10-

22 (9th Cir. 1997); Ins. Co. of No. Am. v. Dealy, 911 F.2d 1096, 1099 (5th Cir. 1990). Although Defendants concede that unserved defendants are not counted for purposes of finality, we need not decide that point of law in this case. Defendants argue that even if the disposition of claims against all served defendants renders a district court's decision final, the orders of dismissal underlying the June 14, 2005 appeal did not dispose of the claims against all of the served defendants and, therefore, did not constitute a final disposition. We agree.

When Plaintiff filed her appeal on June 14, 2005, the district court had dismissed Plaintiff's claims against all defendants except Flemmi, Weeks, Bulger, and the fifty John Does. While Bulger and the fifty John Does had not been served, the record indicates that Flemmi and Weeks had been served. The docket reveals that Plaintiff filed a proof of compliance with waiver of service with respect to Flemmi and Weeks, among other Defendants. The docket entries for September 27 and 28, 2005 further state that the district court entered default judgments against Flemmi and Weeks but not Bulger for whom "[n]o service has been made."

Various statements by Plaintiff support this conclusion. In her brief to us, Plaintiff states that "[t]he district court has entered final decisions dismissing all claims in the complaint against all served defendants, leaving only James Bulger, who is a fugitive from justice and an unserved defendant." (Emphasis added;

-11-

citations omitted.) Plaintiff further states that after "enter[ing] defaults against Bulger, Flemmi and Weeks" on September 27, 2005, "the default against Bulger was vacated because he had not been served with process. The defaults against Flemmi and Weeks remained for failure to plead or otherwise defend. . . ." Plaintiff likewise states in her reply brief that "[a]ll defendants have been served or appeared, except Bulger, Flemmi and Weeks," indicating that while Flemmi and Weeks had not appeared, they had been served. (Emphasis added.)[5] Therefore, the outstanding claims against Flemmi and Weeks defeated finality at the time of the June 14, 2005 appeal, thereby making the notice of appeal untimely.

### b. Finality as of September 28, 2005

Since Plaintiff cannot show that the orders appealed from on June 14, 2005 were final and thus appealable, we must determine whether Plaintiff's premature June 14, 2005 appeal nevertheless ripened into a timely notice of appeal after the entry of judgment against all of Defendants on September 28, 2005. Federal Rule of Appellate Procedure 4(a)(2) addresses premature notices of appeal, stating that "[a] notice of appeal filed after the court announces

---

[5] At oral argument, counsel for Plaintiff stated that Flemmi and Weeks were never served, and that default judgment was entered against Plaintiff -- not Flemmi and Weeks. This is incorrect. The notice of default states that "[f]or failure of the defendants Kevin Weeks, James Bulger, and Stephen J. Flemmi to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure, notice is hereby given that the defendants have been defaulted this 27th day of September, 2005." This notice was subsequently vacated against Bulger for lack of service.

-12-

a decision or order -- but before the entry of judgment or order -- is treated as filed on the date of and after the entry." In FirsTier Mortgage Co. v. Investors Mortgage Insurance Co., 498 U.S. 269 (1991), the Supreme Court held that "Rule 4(a)(2) permits a notice of appeal filed from certain nonfinal decisions to serve as an effective notice from a subsequently entered final judgment." Id. at 274. The Supreme Court cautioned, however, that Rule 4(a)(2) does not render all premature notices of appeal effective upon the entry of final judgment. On the contrary, "Rule 4(a)(2) permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that would be appealable if immediately followed by the entry of judgment." Id. at 276.

If the district court had ordered the dismissal of Plaintiff's claims against all Defendants prior to Plaintiff's appeal, and had entered final judgment against them after the Plaintiff's appeal, this would be an easy case. Under FirsTier, since the orders of dismissal would have been appealable once the perfunctory entry of judgment was made, Plaintiff's premature notice of appeal would ripen into a timely notice after the entry of final judgment. See id. at 277 (holding that premature appeal of bench ruling which "purport[ed] to dispose of all of [plaintiff's] claims" ripened upon entry of final judgment).

Here, however, the district court ordered the dismissal of Plaintiff's claims against some -- but not all -- Defendants prior to Plaintiff's appeal. Thus, the orders appealed from "w[ere] not literally [] decision[s] that would be appealable if immediately followed by the entry of judgment." Clausen v. Sea-3, Inc., 21 F.3d 1181, 1186 (1st Cir. 1994). Because claims against Flemmi and Weeks remained, Plaintiff's appeal "did not dispose of all the claims in the case. Therefore, judgment could not perfunctorily be entered following the ruling absent the certification called for by [Rule 54(b)]." Id. (emphasis omitted).

In Clausen, we extended FirsTier's holding to decisions involving fewer than all claims or fewer than all parties. There, we held that a premature notice of appeal of a decision disposing of some but not all claims ripened into an effective notice because the decision would have been appealable if immediately followed by certification pursuant to Rule 54(b). See 21 F.3d at 1186 (noting that a decision that was appropriate for immediate appeal pursuant to Rule 54(b) was "close enough to a decision that would be appealable if immediately followed by the entry of judgement." (internal quotation marks and emphasis omitted)); see also In re Bryson, 406 F.3d 284, 288 (4th Cir. 2005) ("[While] the FirsTier Court had no occasion to consider an entry of judgment pursuant to [Rule 54(b)]; [] nothing in FirsTier indicates that its holding does not apply to such judgments. And rightly so: a judgment

-14-

properly certified by a district court pursuant to [Rule 54(b)] . . . is just as final as one made final pursuant to other rules."). This case is consistent with Clausen –- the orders of dismissal would have been appealable if certified pursuant to 54(b). We indicated as much in our July 22, 2005 order, in which we noted that "claims against other defendants remain pending in the district court" and directed Plaintiff to show cause why the appeal should not be dismissed absent certification pursuant to Rule 54(b).

Defendants attempt to distinguish Clausen. The premature notice in that case ripened upon the entry of a Rule 54(b) certification. As defendants point out, the decision in this case was never, in fact, certified. Rather, final judgment was entered pursuant to Fed. R. Civ. P. 58. This argument is unavailing. FirsTier's inquiry is a hypothetical one: would the decision underlying the premature notice have been appealable immediately following entry of judgment? See Outlaw v. Airtech Air Conditioning and Heating, Inc., 412 F.3d 156, 162 (D.C. Cir. 2005) ("[FirsTier] asks hypothetically whether the nonfinal decision from which an appeal was noted would be appealable if immediately followed by the entry of judgment." (internal quotation marks, citation, and emphasis omitted)). In Clausen, we placed a gloss on FirsTier's hypothetical inquiry: would the decision underlying the premature notice have been appealable immediately following

-15-

certification pursuant to Rule 54(b)? See Clausen, 21 F.3d at 1186 ("[The district court] had to satisfy itself and certify that the decision was, in effect, appropriate for immediate appeal, pursuant to [Rule 54(b)], notwithstanding its failure to resolve all claims made in the lawsuit."). It does not matter that the underlying orders of dismissal, although certifiable at the time of the June 14, 2005 appeal, were never, in fact, certified, but rather were made final by the entry of a final judgment on September 28, 2005. "Although the hypothetical judgment in FirsTier was identical to the kind of judgment eventually entered, nothing in FirsTier requires that the hypothetical judgment considered in applying its test be the same type as the one actually entered." Outlaw, 412 F.3d at 162. All that is required is that "[t]here must at some point prior to consideration of the appeal actually have been a final appealable judgment of some sort entered." Id. (emphasis added).

Defendants concede that "the district court could have certified a final judgment as to th[e relevant] defendants under [Rule 54(b)], and that partial judgment would have been appealable." In other words, the decision "would have been appealable immediately" by virtue of Rule 54(b). Therefore, Plaintiff's premature notice of appeal ripened upon the entry of final judgment on September 28, 2005. Defendants failure to cite any authority in support of its argument, together with the wealth

of authority supporting the timeliness of such appeals, bolsters this conclusion.  See Outlaw, 412 F.3d at 162 (holding that a premature notice of appeal of decision disposing of plaintiff's claims against some but not all defendants -- which would have been appealable pursuant to Rule 54(b) -- ripened upon the entry of final judgment); accord Garwood Packaging, Inc. v. Allen & Co., Inc., 378 F.3d 698, 701 (7th Cir. 2004) (holding that premature notice of appeal "took effect when, the last defendant having been dismissed, the decision became final"); Ruiz v. McDonnell, 299 F.3d 1173, 1179-80 (10th Cir. 2002) (holding that plaintiff's notice of appeal filed after the dismissal of all except one defendant ripened upon the district court's entry of default judgment against the remaining defendant); id. at 1179 ("[A] notice of appeal filed before the district court disposes of all claims is nevertheless effective if the appellant obtains either certification pursuant to [Rule 54(b)] or final adjudication before the court of appeals considers the case on its merits.").  We therefore have jurisdiction to consider Plaintiff's appeal.

## 2.    Exhaustion under the FTCA

Notwithstanding the timeliness of Plaintiff's appeal, we must next determine whether Plaintiff exhausted her administrative remedies under the FTCA.  The United States, as a sovereign, cannot be sued absent an express waiver of its immunity.  FDIC v. Meyer, 510 U.S. 471, 475 (1994); see also Skwira v. United States, 344

F.3d 64, 72 (1st Cir. 2003).  The FTCA is such a waiver.  It permits individuals to sue the government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674 ("The United States shall be liable [with respect] . . . to tort claims[] in the same manner and to the same extent as a private individual under like circumstances").

"The waiver effected by the FTCA is, however, closely circumscribed by the terms of the statute."  Rakes v. United States, 442 F.3d 7, 18 (1st Cir. 2006).  "[T]o ensure that 'meritorious claims can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation,'" the FTCA includes an administrative exhaustion requirement.  Pascale v. United States, 998 F.2d 186, 188 (3d Cir. 1993) (quoting S. Rep. No. 1327, 89th Cong., 2d Sess. 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2515, 2517) (internal brackets omitted).  28 U.S.C. § 2675(a) states that

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition

-18-

of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

In short, Plaintiff may not file a tort claim in district court until (i) the agency finally denies the administrative claim, or (ii) six months pass without a final denial of the administrative claim -- whichever comes first.

The government argues that the district court lacked jurisdiction to review Plaintiff's FTCA claim because it was filed on April 2, 2003 -- before the DOJ issued its denial of Plaintiff's administrative tort claim (on April 15, 2003), and within the six-month waiting period otherwise required. Plaintiff argues that while she filed her complaint before the administrative denial, she "did not serve or attempt to serve any defendant" until September 29, 2003 -- well "after the [administrative] claim was denied on April 15, 2003." Thus, Plaintiff argues, "[t]his action was begun when service of process was made after denial of plaintiff['s] administrative claim." We disagree.

Plaintiff does not cite any authority for the proposition that we should look at the date of service of process as opposed to the date on which the complaint was filed in determining whether Plaintiff exhausted her administrative remedy. We also have not found any such authority. On the contrary, the plain language of the statute and Supreme Court case law interpreting the statute point to the opposite conclusion. Section 2675(a) states, in

-19-

relevant part, that "[a]n action shall not be <u>instituted</u> upon a claim against the United States" unless the claimant first presents the claim to the appropriate Federal agency and the claim is finally denied. (Emphasis added.) According to the Supreme Court, "the word 'institute' is synonymous with the words 'begin' and 'commence.'" <u>McNeil</u> v. <u>United States</u>, 508 U.S. 106, 112 (1993). Pursuant to Rule 3 of the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court." Thus, an action is instituted for purposes of section 2675(a) when the complaint is filed. <u>See</u> <u>McNeil</u>, 508 U.S. at 112 (rejecting the argument that an action is instituted when "substantial progress has been made in the litigation").

Plaintiff's other arguments fare no better. Plaintiff contends that since she complied with the FTCA's statute of limitations under 28 U.S.C. § 2401(b) -- the only statutory provision referenced in the DOJ's denial of her administrative tort claim -- we have jurisdiction to review her FTCA claim. This argument is incorrect.

Section 2401(b) states that

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

-20-

Even if we assume that Plaintiff's claim was brought within the time allotted by section 2401(b), this timeliness has nothing to do with whether Plaintiff has satisfied the FTCA's exhaustion requirement under section 2675(a). Section 2401(b) limits the time a claimant has to file its administrative tort claim and complaint, respectively. Specifically, the statute requires that a claimant present an administrative tort claim to the appropriate government agency within two years of accrual of the claim, and, assuming the claim is denied, file a complaint in district court within six months of notice of final denial by the agency. Section 2675(a), on the other hand, prescribes what a claimant must do before bringing an FTCA claim in federal court. Specifically, the statute requires that the claimant wait for a final disposition from the agency (or, in lieu thereof, the passage of six months without a final disposition) before filing the complaint. Plaintiff's contention that her alleged compliance with section 2401(b)'s statute of limitations relieved her of section 2675(a)'s exhaustion requirement is therefore unavailing.

In a related argument, Plaintiff contends that "by waiting out the response time on the administrative claim" under the FTCA, "the agency could cause the statute of limitations to expire on Bivens claims or force separate suits." While that may

be true in this case,[6] the remedy is for Plaintiff to file separate claims, which would not be barred by the rule against claim-splitting. See Torromeo v. Fremont, 438 F.3d 113, 117 (1st Cir. 2006); see also Restatement (Second) of Judgments § 26(1)(c) (allowing exception to rule against claim-splitting where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts . . . and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief."). We cannot read the exhaustion requirement out of the FTCA. See McNeil, 508 U.S. at 113 ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); see also Acosta v. U.S. Marshals Service, 445 F.3d 509, 513 (1st Cir. 2006) ("The [FTCA] also contains an exhaustion requirement, which has been viewed as 'a non-waivable jurisdictional requirement' limiting the suit to claims fairly made to the agency." (quoting Santiago-Ramirez v. Sec'y of Dep't of Def., 984 F.2d 16, 18, 19-20 (1st Cir. 1993)).

Finally, Plaintiff implies that since Defendants raised this argument "for the first time" on appeal, we cannot review it.

---

[6] Plaintiff argues that if she had waited six months to file her complaint in district court, i.e., July 14, 2003, her claim would have fallen outside of the three-year statute of limitations under Bivens and state tort law, which required her claim to be filed by April 3, 2003.

This argument is unavailing. "[An] objection to subject matter jurisdiction is not waivable and may be raised for the first time on appeal." F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico, 449 F.3d 185, 189 (1st Cir. 2006). By filing the complaint in the absence of agency action and in less than six months of filing her administrative tort claim, Plaintiff failed to exhaust her remedies. We therefore lack jurisdiction to review Plaintiff's FTCA claim against the government.

**B.    Merits**

Plaintiff's Bivens and wrongful death claims are subject to a three-year statute of limitations. See Mass. Gen. Laws ch. 229, § 2 (stating that "an action to recover damages [for wrongful death] shall be commenced within three years"). While Congress has not established a limitations period for Bivens claims, "courts generally have applied state statutes of limitations to Bivens actions notwithstanding the fact that such actions lie only against federal officers." Rossiter v. Potter, 357 F.3d 26, 34 n.7 (1st Cir. 2004); see also Wilson v. Garcia, 471 U.S. 261, 266-67 ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."). We need not decide between Massachusetts' statute of limitations for tort actions, Mass. Gen. Laws ch. 260, § 2A, and Massachusetts' statute of limitations for

-23-

civil rights actions, Mass. Gen. Laws ch. 260, § 5B, in determining the limitations period for Plaintiff's Bivens claims, since both statutes of limitations are three years. See Street v. Vose, 936 F.2d 38, 39 n.2 (1st Cir. 1991).

This three-year limitations period commenced upon the "accrual" of Plaintiff's claims. While state law establishes the statute of limitations for Bivens claims, "the question of when a cause of action accrues in a civil rights case is a matter of federal law." Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001). "Under federal law, the statute of limitations on a Bivens claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Van Tu v. Koster, 364 F.3d 1196, 1199 (10th Cir. 2004). As to Plaintiff's wrongful death claim, the accrual period provided by the statute itself is similar: "three years from the date of death, or within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action." Mass. Gen. Laws ch. 229, § 2. Thus, for both the Bivens and wrongful death claims, the three-year limitations period commenced when Plaintiff had either actual knowledge or constructive knowledge of her husband's death and "sufficient facts to permit a reasonable person to believe that there [wa]s a causal

connection between the government and her [husband's death]." Skwira, 344 F.3d at 78.[7]

As the district court noted, Plaintiff must have knowledge of facts sufficient to permit a reasonable person to believe that:  "Bulger and Flemmi were instrumental in the murder of Barrett[;] Bulger and Flemmi were informants for the FBI[;] and [] the FBI . . . protected and encouraged Bulger and Flemmi in their criminal activity, including Barrett's murder."  While "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim," McIntyre v. United States, 367 F.3d 38, 52 (1st Cir. 2004) (internal quotation marks and citation omitted), "conclusive knowledge is not necessary."  Skwira, 344 F.3d at 78.

Plaintiff filed her complaint on April 2, 2003.  If her claims accrued prior to April 2, 2000, she was beyond the statute

---

[7] We acknowledge that the formulation of the accrual standard we apply here is taken from Skwira, which addressed the accrual of FTCA claims rather than Bivens claims. See Skwira, 344 F.3d at 78. However, the formulation in Skwira is comparable to the accrual standard used in the Bivens context. See, e.g., Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995)(en banc) (stating as to Bivens actions that "[u]nder federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.").  As for applying the Skwira formulation to Plaintiff's wrongful death claim, Massachusetts leaves it within the discretion of the court to fashion a precise accrual standard based on the statutory language. Pobieglo v. Monsanto Co., 521 N.E.2d 728, 731 (Mass. 1988) ("When the Legislature limits the time within which suit can commence from the date of accrual, it leaves to the court the determination of the precise meaning of the term accrued.").

of limitations when she filed the cause of action.  Plaintiff argues that she neither "knew [n]or had reason to know that her husband had been murdered by specific persons and that such murder had been caused by law enforcement officials of the federal government" until some time on or after April 3, 2000.[8]  Since she filed her complaint on April 2, 2003, Plaintiff argues that her Bivens and wrongful death claims are thus within the three-year statute of limitations.  Plaintiff contends that her March 9, 2000 statement, which, according to the district court, "indicate[d] that . . . she knew that the government was responsible for the murder of her husband," was misconstrued by the court.  Plaintiff argues that while she stated in the article that "the government is responsible" and that it "gave them a license to kill," she did not directly reference Bulger, Flemmi, the FBI, or any other state or federal agency.  Plaintiff also points to a statement that she made to reporters in July 2000 -- stating that, "[w]hoever did it should be brought to justice" -- in support of her argument that she had no knowledge of who killed her husband.  Plaintiff further argues that the Salemme decision "contained little more than conjecture

_____

[8] There is some discrepancy in the record surrounding the date on which Plaintiff contends that her Bivens and wrongful death claims accrued.  In her appellate brief, Plaintiff appears to argue that her claims accrued on April 3, 2000 when her husband's body was released to her.  However, at oral argument and in a letter submitted to us pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, Plaintiff states that her claims did not accrue until after "Flemmi's guilty plea" on October 14, 2003.

and speculation concerning FBI misconduct and culpability in the handling of Bulger and Flemmi and nothing about the murder of Barrett."

Defendants argue that, prior to April 2, 2000, Plaintiff had actual knowledge of facts sufficient to believe that her husband had been killed by persons connected to the federal government, as evidenced by her March 9, 2000 statement. Therefore, Defendants argue that Plaintiff's claims are time-barred. We agree. While Plaintiff's March 9, 2000 statement does not specifically reference Bulger and Flemmi, we agree with Defendants that based on the context of the article, which discusses the positive identification of Barrett's body and Bulger's and Flemmi's involvement in Barrett's death, "there can be no doubt that she is referring to defendants Bulger and Flemmi as actually committing the murder of her husband." Plaintiff's failure to identify the specific government agency responsible for Bulger and Flemmi's actions (i.e., the FBI), moreover, does not undermine the accrual of her claims. Accrual is based on a plaintiff's knowledge of facts sufficient to give rise to a belief that the government -- not any particular agency of the government -- caused the injury. See Skwira, 344 F.3d at 78 ("[A] claim accrues under the FTCA once a plaintiff knows . . . sufficient facts to permit a reasonable person to believe that there [wa]s a causal connection between the government and her injury." (emphasis

-27-

added)).  Plaintiff's March 9, 2000 statement established her actual knowledge of facts sufficient to believe that the government, through Bulger and Flemmi, caused the death of her husband.[9]  We therefore agree with the district court that

> by that statement, the plaintiff has admitted that, not later than March 8, 2000, she had actual knowledge of the involvement of Bulger and Flemmi in Barrett's murder, the fact that Bulger and Flemmi were FBI informants at the time of Barrett's murder, and the fact that the FBI encouraged and protected Bulger and Flemmi in the murder of Barrett.  In short, her statement indicates that by

---

[9] Plaintiff argues that the district court should not have relied on Wheeler v. United States, 367 F.3d 38 (1st Cir. 2004), in which we upheld the dismissal of a tort action against the government -- which arose out of the murder of the decedent by FBI informants -- on statute-of-limitations grounds.  Id. at 60-61.  Rather, Plaintiff argues that the district court should have relied on the consolidated case of McIntyre v. United States, 367 F.3d 38 (1st Cir. 2004), in which we vacated the dismissal of a tort action against the government -- which arose out of the murder of an FBI informant by other FBI informants -- on statute-of-limitations grounds.  Id. at 57.  Plaintiff's argument is without merit.  The district properly relied on Wheeler, which is factually similar to this case, and did not rely on McIntyre, which is distinguishable from this case because it involved the murder of an FBI informant whose status was betrayed by the government.

Plaintiff also contends that the statute of limitations on her claims should be equitably tolled for two reasons:  first, because of "her fear for the safety of the rest of her family" which presumably delayed her filing of her claims; and second, because of the district court's "disparate treatment of [P]laintiff" as compared to its treatment of the plaintiff in Donahue v. F.B.I., 204 F. Supp. 2d 169 (D. Mass. 2002), whose claim was not barred by the FTCA's statute of limitations.  Neither argument appears to have been raised below and neither is developed on appeal.  While we have recognized the availability of duress for tolling the FTCA's statute of limitations, Rakes v. U.S., 442 F.3d 7, 26 (1st Cir. 2006), Plaintiff cannot argue on appeal issues not raised below or developed only perfunctorily on appeal.  See Bonas v. Town of N. Smithfield, 265 F.3d 69, 76 n.5 (1st Cir. 2001) ("[I]ssues raised by an appellant but not developed are deemed waived.").

-28-

March 8, 2000, she knew that the government was responsible for the murder of her husband.[10]

## III.

The death of Barrett as the result of the FBI's misconduct is a tragedy. The rejection of what might otherwise be a meritorious claim because of the technical requirements of the FTCA and related laws is unfortunate. But these requirements do serve important purposes.[11] It is also a fact that some plaintiffs have succeeded in meeting these requirements. See McIntyre, 367 F.3d at 57; Donahue, 204 F. Supp. 2d at 177-78. In this case, that has not happened. For the foregoing reasons, the district court's orders of dismissal entered on October 28, 2004, December 1, 2004, and April 15, 2005, which underlay Plaintiff's June 14, 2005 appeal, are **affirmed**. No costs shall be taxed against Plaintiff.

**So ordered**.

---

[10] Because we find that Plaintiff had actual knowledge of her husband's death and sufficient facts to believe that the government was involved in his death, we need not analyze whether Plaintiff also had constructive knowledge of these facts. See Patterson, 451 F.3d at 271 (distinguishing between actual knowledge and constructive knowledge).

[11] "The purpose of the FTCA's exhaustion requirement is to facilitate the administrative evaluation of tort claims by the agency whose activity gave rise to the claim and permit settlement of meritorious claims more quickly and without litigation." Warrum v. United States, 427 F.3d 1048, 1050 (7th Cir. 2005) (citing McNeil, 508 U.S. at 112 n. 7 (1993). "[T]he primary purpose of a statute of limitations is to prevent plaintiffs from sleeping on their rights and to prohibit the prosecution of stale claims." Edes v. Verizon Communications, Inc., 417 F.3d 133, 142 (1st Cir. 2005) (internal quotation marks, citation, and brackets omitted).