# United States Court of Appeals
## For the First Circuit

No. 19-1618

JOSEPHINE B. DONAHUE, on behalf of herself and all others so
similarly situated,

Plaintiff, Appellant,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION;
OCWEN LOAN SERVICING, LLC,

Defendants, Appellees,

82 COBB LANE, LLC,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Howard, Chief Judge,
and Barron, Circuit Judge.[*]

Todd S. Dion on brief for appellant.
Marissa I. Delinks and Hinshaw & Culbertson LLP on brief for
appellee Ocwen Loan Servicing, LLC.

---

[*] While this case was submitted to a panel that included Judge
Torruella, he did not participate in the issuance of the panel's
opinion. The remaining two panelists therefore issued the opinion
pursuant to 28 U.S.C. § 46(d).

November 12, 2020

**Barron, <u>Circuit Judge</u>.** Josephine Donahue appeals from a grant of summary judgment to Ocwen Loan Servicing, LLC ("Ocwen") in her 2017 suit in the District of Massachusetts against Ocwen and the Government National Mortgage Association ("GNMA").[1] We affirm.

## I.

The suit has its origin in a mortgage that Donahue executed on or about June 22, 2010, in the amount of $484,330, to Reliant Mortgage Company for her home in Scituate, Massachusetts. In June of 2014, the mortgage was assigned to Ocwen, and, in September of 2014, Donahue defaulted on it.

More than a year later, on June 17, 2016, Ocwen sent a letter to Donahue, who remained in default, that notified her that a foreclosure sale would occur on July 21, 2016. Ocwen then conducted an appraisal that indicated that the fair market value of the property was $500,000, a figure that Donahue disputes. Ocwen held the foreclosure auction on July 21, 2016. Ocwen was the highest bidder and paid $482,264 for the property.

Following the auction, Donahue filed suit on February 27, 2017, under Massachusetts law, against GNMA and Ocwen in Massachusetts Superior Court. The complaint alleged, first, that

---

[1] Donahue misnamed GNMA in the case caption, instead listing the "Federal National Mortgage Association" as a defendant, but properly named GNMA in the body of the complaint.

GNMA and Ocwen executed a conveyance of her property on behalf of another entity without the appropriate Power of Attorney in violation of Mass. Gen. Laws ch. 183, § 32 and Mass. Gen. Laws ch. 183, § 4, (Count I). Second, the complaint alleged that the defendants breached their duty of good faith and reasonable diligence under Massachusetts contract law (Count II). Third, the complaint alleged that the defendants breached the mortgage contract and the covenant of good faith and fair dealing (Count III) under Massachusetts law. With respect to this claim, the complaint alleged that the defendants had failed to satisfy regulations of the United States Department of Housing and Urban Development that her mortgage contract had incorporated and that created a number of conditions precedent to foreclosure, including that the mortgagee "make a reasonable effort to arrange" a face-to-face interview with the mortgagor before foreclosure, 24 C.F.R. § 203.604(b).

With GNMA's consent, Ocwen removed the action to the District of Massachusetts based on diversity jurisdiction. See 28 U.S.C. § 1332. GNMA never filed an appearance. Ocwen then moved for summary judgment as to all of Donahue's claims against it, and the District Court granted that motion on May 20, 2019. The District Court's judgment, however, did not address Donahue's then-still-pending claims against GNMA.

The next event of relevance to the issues before us occurred on June 17, 2019.  That was when Donahue filed her notice of appeal in our Court.  On appeal, she sought review of only the grant of summary judgment to Ocwen on Count III of her complaint.

In response, our Court, on August 7, 2019, issued an order to show cause concerning our appellate jurisdiction.  The concern about our jurisdiction arose from the fact that the District Court's grant of summary judgment to Ocwen as to all of Donahue's claims against it did not address Donahue's then-still-pending claims against GNMA.  The show-cause order stated that "the orders appealed from do not appear to be final or appealable on an interlocutory basis" and thus that:

> [T]his court does not appear [to] have jurisdiction to review this appeal, absent certification pursuant to Fed. R. Civ. P. 54(b).  See 28 U.S.C. §§ 1291, 1292; Barrett ex rel. Est. of Barrett v. United States, 462 F.3d 28, 32 (1st Cir. 2006) (stating that a district court's order disposing of fewer than all defendants is not ordinarily final and appealable when it lacks a Rule 54(b) certification).

See Fed. R. Civ. P. 54(b) ("[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the

- 5 -

claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). The order required Donahue to either voluntarily dismiss her appeal or "show . . . why this appeal should not be dismissed for lack of jurisdiction."

On August 9, 2019, Donahue filed a notice of voluntary dismissal in the District Court of her claims against GNMA pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). The District Court did not enter any further orders or judgments, and Donahue did not file a new notice of appeal. Donahue then filed a response to the show-cause order in our Court on August 21, 2019. In that response, she stated that her appeal should go forward because GNMA "never responded to the original complaint nor are they the mortgagee in the case and the Appellant has requested they be dismissed from the case."

## II.

We begin by addressing whether we have appellate jurisdiction to hear this case. The parties initially were in agreement that there was jurisdiction under 28 U.S.C. § 1291 based on a ripening of the premature notice of appeal that took effect when the plaintiff voluntarily dismissed her claims pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Following our issuance of an opinion rejecting that position, Donahue filed a

- 6 -

petition for rehearing,[2] and we requested supplemental briefing. The parties now diverge as to whether we have appellate jurisdiction, in part based on the significance of the fact that Donahue had previously voluntarily dismissed what she asserts was the same claim against GNMA, which she contends affects the finality of the events following her notice of appeal.[3]

Having now considered these arguments, including those not raised before, we conclude that the prudent course here is, as we sometimes do, to assume appellate jurisdiction and proceed to the merits, given how clear they are. See Alvarado v. Holder, 743 F.3d 271, 276 (1st Cir. 2014) ("Here, the question of whether we possess statutory jurisdiction . . . is not easily answered, but the outcome on the merits is quite straightforward. Thus, without further ado, we pass over the jurisdictional issue and press on

---

[2] In this petition, Donahue also contended that GNMA was never properly served.

[3] Donahue argues that her voluntary dismissal of GNMA following our show-cause order should be construed as with prejudice. See Fed. R. Civ. P. 41(a)(1)(B) (providing that while the default effect of a Rule 41(a)(1)(A)(i) dismissal is without prejudice, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits"). Ocwen asserts that the two-dismissal rule does not transform Donahue's voluntary dismissal of her claims against GNMA into a dismissal with prejudice. It contends that the plaintiff would need to institute a new action following the dismissal of the second one for the rule to even apply, as that rule functions as a bar to such an additional action that states the same claim that already had been voluntarily dismissed twice. See Com. Space Mgmt. Co. v. Boeing Co., 193 F.3d 1074, 1076 (9th Cir. 1999).

with the substance of petitioners' claims."). This is so especially because Donahue's representations to this Court, if not the obstacle the "two-dismissal" rule presents to any attempt by her to reassert the claims against GNMA, are sufficient to assure us that any concerns we may have about a voluntary dismissal without prejudice finalizing a judgment so as to effect a ripening, see Ramos-Santiago v. WHM Carib, LLC, 919 F.3d 66, 70 (1st Cir. 2019) (recognizing circumstances in which we have allowed "a premature notice of appeal of a decision disposing of some but not all claims" to "relate forward" to a final judgment (quoting Barrett ex rel. Est. of Barrett v. United States, 462 F.3d 28, 34 (1st Cir. 2006))), are not present here, cf. Williams v. Seidenbach, 958 F.3d 341, 348 (5th Cir. 2020) (en banc) (expressing concern about permitting a voluntary dismissal without prejudice to effect the ripening of a premature notice of appeal because "[a] dismissal without prejudice is equivalent to no dismissal at all because the claim can be refiled at any time" (citing ITOFCA, Inc. v. MegaTrans Logistics, Inc., 235 F.3d 360, 364 (7th Cir. 2000))).

We thus now turn to the merits.

### III.

The District Court held that Ocwen was entitled to summary judgment on the only claim that is at issue here because Donahue failed to establish a genuine issue of material fact as to

- 8 -

either whether Ocwen breached the terms of the mortgage contract or whether Donahue sustained damages as a result of the alleged breach. Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party -- here, Donahue -- "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the moving party is entitled to a judgment as a matter of law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). Thus, to survive a defendant's motion for summary judgment, "a plaintiff must establish at least a genuine issue of material fact on every element essential to his case in chief." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991). Our review is de novo. Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). Because we agree with the District Court's analysis as to the breach of contract issue, and because its ruling on that score alone suffices to support the grant of summary judgment to Ocwen, we begin and end our analysis there.

Donahue focuses her challenge initially on what the record shows about whether Ocwen satisfied the pre-foreclosure requirement in 24 C.F.R. § 203.604(b), which states that a "mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." See Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1219 (Mass. 2015)

- 9 -

("[T]he mortgagee, to effect a valid foreclosure sale, must strictly comply not only with the terms of the actual power of sale in the mortgage, but also with any conditions precedent to the exercise of the power that the mortgage might contain."). The District Court did not dispute -- nor, for that matter, does Ocwen -- that this HUD regulation was incorporated into the mortgage contract or that compliance with the regulation was a condition precedent that could give rise to a breach of contract claim. Rather, the District Court held that Donahue failed to show that there is a genuine issue of material fact as to whether Ocwen satisfied the regulation, because Ocwen had "submitted unrebutted evidence" that it had met the HUD regulations' requirements in 24 C.F.R. § 203.604(b) and that the mortgage contract required no more. Donahue v. Fed. Nat'l Mortg. Ass'n, 2019 WL 2176939, at *6 (D. Mass. May 20, 2019).

In so ruling, the District Court did not find -- nor does Ocwen contend -- that Ocwen had a face-to-face interview with Donahue. The District Court instead ruled that Ocwen indisputably had satisfied the regulation's alternative requirement that the lender make a "reasonable effort to arrange a face-to-face meeting with the mortgagor," which must "consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched . . . [and] at least one trip to see the mortgagor

- 10 -

at the mortgaged property."  24 C.F.R. § 203.604(d); see Donahue, 2019 WL 2176939, at *5-7.

In support of that conclusion, the District Court found "the record reflects that Ocwen sent" the February 5 letter pursuant to 24 C.F.R. § 203.604(d) because Ocwen submitted into evidence a copy of the letter, which had a United States Postal Service tracking number on it, as well as affidavits from an Ocwen employee "validating that the letter was sent in accordance with Ocwen's regular practice[]" to send certified letters to comply with the HUD regulation.  Donahue, 2019 WL 2176939, at *5-6. Moreover, the record shows that Donahue's file in Ocwen's business records noted the same mailing date of February 5, 2016 and the same USPS tracking number.  See Simpson v. Jefferson Standard Life Ins. Co., 465 F.2d 1320, 1324 (6th Cir. 1972) ("[P]roof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance, is sufficient to establish proof of mailing.").[4]

To establish that, notwithstanding the evidence, there is a genuine issue of disputed fact as to whether the letter was

---

[4] To the extent that Donahue is making a separate argument that the grant of summary judgment was improper because Ocwen failed to put forth evidence sufficient to demonstrate that it had met its burden of proof to show that it had sent a letter certified by the Postal Service as having been dispatched pursuant to 24 C.F.R. § 203.604(d), that contention is not persuasive in light of the evidence from the record just recounted.

actually sent,[5] Donahue asserts that the record supports the finding that the tracking number that Ocwen said the USPS gave for the February 5 letter was actually the tracking number for a letter sent to California rather than Massachusetts. Donahue makes this claim based on her attorney's declaration that on or about July 10, 2017, Donahue's attorney searched the USPS tracking results and found that a letter sent by certified mail with the tracking number that was on the copy of the letter that Ocwen had placed into evidence was delivered to Temecula, California on March 9, 2016. But, given the limited universe of numbers than can easily fit on a letter, Donahue's contention that the tracking number at issue was exclusively used for a letter delivered to Temecula, California on March 9, 2016, is the type of "bald assertion[],

---

[5] Donahue also argues that her affidavit, which states that she never received the February 5, 2016 letter, creates a genuine issue of fact. But, the regulation only requires that the mortgagor send the letter; it does not require that the mortgagee receive the letter.

Donahue briefly makes one other argument. Ocwen clarified to the District Court that it had made a clerical error in inadvertently attaching the electronic return receipt from the February 5 letter to a copy of another letter that it had sent Donahue on October 28, 2015, when submitting the letters to the District Court. Ocwen never claimed that the letter dated October 28, 2015 was sent by certified mail or that it contained tracking information. The District Court correctly acknowledged that the tracking number was only supposed to be in reference to the February 5 letter. Donahue argues that this -- now remedied -- clerical error creates an issue of material fact as to whether the February 5 letter was "certified by the Postal Service as having been dispatched" in accordance with the regulation. That argument is plainly meritless.

unsupported conclusion[], or optimistic surmise[]" on which a plaintiff cannot rely. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 (1st Cir. 2007); see Abbott v. Bragdon, 107 F.3d 934, 938 (1st Cir. 1997) ("[W]e must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation."), vacated on other grounds, 524 U.S. 624 (1998).

Donahue separately claims that Ocwen breached the mortgage contract because it failed to comply with another requirement under 24 C.F.R. § 203.604(d), which she claims is another condition precedent to foreclosure. That section requires that a mortgagee's "reasonable effort to arrange a face-to-face meeting with the mortgagor" must include "at least one trip to see the mortgagor at the mortgaged property." 24 C.F.R. § 203.604(d).

Here, too, the District Court did not dispute that the mortgage contract incorporated this requirement or that it set forth a condition precedent, and neither does Ocwen. But, again, Donahue has failed to point to evidence in the record from which a reasonable jury could find that Ocwen failed to comply with the requirement.

Ocwen submitted photographic evidence in the District Court that its agent visited the property on February 2, 2016 to advise Donahue of her opportunity to have a face-to-face interview with a representative of Ocwen, and that the agent left a doorknocker with that information. Ocwen also submitted its

business records of Donahue's account file, which are consistent with Ocwen's claim that the doorknockers were put up on or about February 2, 2016. And, Ocwen submitted an affidavit from an Ocwen employee that it was Ocwen's regular practice to place doorknockers on the mortgaged property with a HUD face-to-face notice informing the mortgagor of the opportunity to schedule a meeting with an Ocwen representative and that that practice was followed here.

Donahue's sole response hinges on the surprising contention that Ocwen's "doorknocker," even if placed, did not satisfy the regulation, because Ocwen did not show that the individual who left the doorknocker had the "qualifications or authority to conduct a face-to-face meeting for the purpose of resolving mortgage delinquencies." But, we agree with the District Court that the regulation imposes no such requirement as to the qualifications of the person who was sent to arrange the interview. See 24 C.F.R. § 203.604 ("A reasonable effort to arrange a face-to-face meeting with the mortgagor . . . shall also include at least one trip to see the mortgagor at the mortgaged property . . . ."). And, the one passage in the Federal Housing Administration Handbook on which Donahue seizes to support her contention, see FHA Handbook 4330.1 Rev-5, § 7-7(c)(2)(b) (providing that a reasonable effort to arrange a face-to-face interview includes "at least one visit to the property . . . for which at least one of the reasons for the visit must be to conduct

- 14 -

an interview with the mortgagor"), does not do so when read in the context of the regulation as a whole.[6]

## IV.

The decision below is **<u>affirmed</u>**.

---

[6] Donahue does not argue that any other conditions precedent were not met.  In particular, Donahue states that the timing component of 24 C.F.R. § 203.604(b), which requires that the "reasonable effort to arrange such a meeting, [must be made] before three full monthly installments due on the mortgage are unpaid," is not a condition precedent because the only strict timing requirement is that the regulation is satisfied "prior to initiating the foreclosure."  <u>See</u> <u>Wells Fargo Bank, N.A.</u> v. <u>Cook</u>, 31 N.E.3d 1125, 1131 n.10 (Mass. App. Ct. 2015).